[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-13683

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 1, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00005-CR-GKS-JGG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASON M. MORIARTY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 1, 2005)

Before BLACK, WILSON and COX, Circuit Judges.

PER CURIAM:

Jason Moriarty, who pled guilty in open court to several child pornography-related offenses, now appeals his convictions and sentence. Moriarty's principal claim on appeal is that his plea was not knowing and voluntary because the district court failed to obtain an express plea of guilty from him during the plea colloquy, and thereby violated the Fifth and Sixth Amendments to the Constitution, as well as Federal Rule of Criminal Procedure 11 ("Rule 11").[1] In addition, Moriarty contends that the district court erred by: enhancing his sentence under the United States Sentencing Guidelines (the "Guidelines") based on facts which Moriarty did not admit; imposing a lifelong term of supervised release without prior notice; declining to grant Moriarty a downward adjustment under the Guidelines for acceptance of responsibility; and imposing a general sentence. The district court's failure to obtain an express guilty plea from Moriarty at the start of the plea colloquy, and to follow Rule 11 carefully, warrants our express disapproval. Nevertheless, we affirm Moriarty's convictions for the reasons set forth below. Most of Moriarty's challenges to his sentence likewise lack merit, but the district court's imposition of a general sentence necessitates a limited remand for clarification.

---

[1] According to Moriarty, the district court also erred by failing to instruct him on several other matters as required by Rule 11.

2

# I. BACKGROUND

A three-count superseding indictment filed on February 4, 2004, charged Moriarty with the following: (1) attempting to receive and receiving with intent to sell child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), (a)(4)(B), and (b)(1) (Count One); (2) attempting to possess and possessing child pornography, in violation of § 2252A(a)(5)(B) and (b)(2) (Count Two); and (3) receiving and possessing with intent to distribute an obscene visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 1466A(a)(1) and (2) (Count Three). Moriarty decided to plead guilty to all three counts, and appeared with his attorney Stephen Langs for a rearraignment hearing on April 21, 2004.

At the rearraignment, after counsel stated their appearances for the record and Moriarty was sworn in, the district court initiated the plea colloquy as follows:

> THE COURT: Mr. Moriarty, you have entered a plea of guilty to Count 1, Count 2 and Count 3 of the Indictment. Count 1 charges you with attempted receipt or possession of child pornography with the intent to sell it. Count 2 charges you with receipt or possession of child pornography, and Count 3 charges you with the receipt and possession with intent to distribute obscene visual representations of the sexual abuse of children.
>
> Do you understand what you are being charged with?

3

THE DEFENDANT:    Yes, Your Honor.

The court proceeded to outline the essential elements of the foregoing offenses, and Moriarty indicated that he understood what he was being charged with in each. The court then informed Moriarty about his right to a jury trial:

THE COURT:    And do you understand that by entering a plea of guilty to Counts 1, 2, and 3 that you are giving up your right to a jury trial?

THE DEFENDANT:    Yes, Your Honor.

THE COURT:    By giving up this right, you are giving up your right to appear before a jury with your counsel and to cross examine witness against you. You are giving up your right to call witnesses in your own behalf before a jury, and you are giving up your right to testify in your own behalf, if you wish to do so. Do you understand that?

THE DEFENDANT:    Yes, Your Honor.

The court then explained the minimum and maximum penalties applicable to each count, including "a term of supervised release of any term of years up to life," and Moriarty acknowledged that he understood the penalties. At this point Moriarty's counsel interposed an objection on an issue not relevant to this appeal. The district judge noted the objection and preserved it for sentencing. He then resumed the colloquy with Moriarty:

THE COURT:    Has anybody threatened you in any way to get you to enter into this plea?

THE DEFENDANT:    No, sir. No, Your Honor.

4

THE COURT:     Has anybody made any promises to you?

THE DEFENDANT:     No, Your Honor.

THE COURT:     During the time that you have been detained, have you been under prescriptions of any kind that you feel might impair your ability to understand this plea?

THE DEFENDANT:     No, Your Honor.

THE COURT:     Are you entering a plea of guilty because you are guilty or for some other reason?

THE DEFENDANT:     Because I am guilty.

THE COURT:     Would you please state to the court, for the record, exactly what you did?

THE DEFENDANT:     I downloaded child pornography while I was here in Orlando staying at my roommate's house.

At the instruction of the district court, the Government then stated for the record what it could have proven if the case went to trial. Among other things, the Government stated that law enforcement officers conducted a consent search of Moriarty's room:

> And in searching the room, found the envelope containing 43 images of child pornography that had been printed off the computer and an additional novel which contained 50 to 100 images of child pornography that had been pasted within the pages of the novel. Among the images were images that depicted sadistic sexual abuse of children who were bound and gagged, images of child sexual torture, including some that were very violent, and a motion photographic image of identifiable persons.

5

The Government explained that the images contained in the envelope (which was labeled "KFC pictures") and in the "Hollywood Kids" novel depicted real children who have been identified as having been sexually abused. The Government added:

> After his arrest. Mr. Moriarty admitted to FBI agents . . . that he had brought the Hollywood Kids novel containing the child pornography and the motion images to Florida with him from Indiana. He referred to this as work in progress. He also explained that he used a computer belonging to his Orlando roommate . . . to access child pornography on the Internet – photographs – at photoisland.com of which he was a member and of which he and friends has used to trade images back and forth.
>
> He explained that the initials KFC on the envelope containing the pictures stood for "Kiddy Fuckers Club", which is the way that he and his club referred to themselves . . . and that he had downloaded the photographs in order to sell them. He also said that they printed and sold images of child pornography in the past.

After the Government completed its proffer, the district court stated:

> THE COURT:    Mr. Langs, anything you would like to add to that?
>
> MR. LANGS:    No, sir.
>
> THE COURT:    Is there anything that you would additionally like the court to discuss regarding his rights as far as making his plea?
>
> MR. LANGS:    In that there were obviously – I shouldn't say obviously – there were potential motions to suppress in this case, Your Honor, one being a 6th Amendment right violation on Indiana; potentially one in connection with the search that was conducted down here in Florida, a 4th Amendment violation.

I have talked to Mr. Moriarty about that. However, he has come forward. He wants to accept responsibility for his conduct, and that he would be waiving those potential motions in this case to avoid going to trial, and I guess working out the more significant issues in this case, which are sentencing matters.

THE COURT: Anything further from the Government?

MS. TYLKE: No, Your Honor.

THE COURT: All right. Mr. Moriarty, the court will accept your plea of guilty to Counts 1, 2, and 3. I will order a pre-sentence report and set sentencing for July 21st at 9:00 o'clock.

MR. LANGS: Thank you, Your Honor.

THE COURT: Anything further at this time?

MS. TYLKE: No, Your Honor.

THE COURT: Then we'll stand adjourned.

At sentencing, Moriarty conceded the applicability of all but one sentencing enhancement under the Guidelines–a five-level enhancement for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor. In response, the Government called to the stand one of Moriarty's neighbors, who testified in detail to her belief that Moriarty had broken into her six-year old son's bedroom, sexually assaulted him, and stolen his pull-up pajama pants. The Government then elicited testimony from an FBI agent corroborating the neighbor's understanding of events. This included testimony about certain "Spy

7

Reports," in which Moriarty graphically described his desire for and sexual contact with the neighbor's son and other children. Moriarty's counsel conducted cross-examinations, but called no witnesses to the stand. The district court ultimately applied the disputed enhancement and found the presentence report ("PSR") to be correct in setting the offense level at 37 and the criminal history category at two. The district court then offered Moriarty an opportunity to speak, but he declined to do so. After hearing the arguments of Moriarty's counsel, the district court imposed the sentence:

> THE COURT:    Mr. Moriarty, you have–under the Guidelines you have a total offense level of 37, criminal history category two. The Court finds from the presentence report and from the testimony that you have a definite problem with deviate conduct, that if you are not removed from society, you're going to endanger the lives of young children in the future. I can see it coming. You need to be taken out of society so it can be prevented.
>
> The Court is going to sentence you to 20 years in the Bureau of Prisons, a lifetime of supervised release, and a $300 special assessment.
>
> Anything you would like to state to the court now that you have been sentenced?
>
> THE DEFENDANT:    No, Your Honor.
>
> MR. LANGS:    Just for the record, I would object to the lifetime supervised release, Your Honor. I think that's unconstitutional.
>
> THE COURT:    All right. Take that up with the 11th Circuit.
>
> MR. LANGS:    Thank you, Your Honor.

8

THE COURT: We will stand adjourned.

On appeal, Moriarty seeks reversal of his convictions on the grounds that his plea was not knowing and voluntary, and was taken in violation of Fed. R. Crim. P. 11. Moriarty further contends that the district court erred by: enhancing his sentence based on facts to which Moriarty did not admit; imposing a lifelong term of supervised release without prior notice; declining to grant Moriarty a downward adjustment under the Guidelines for acceptance of responsibility; and imposing a general sentence.

## II. DISCUSSION

### A. *Guilty Plea*

Moriarty contends that his guilty plea was not knowing and voluntary because the district court failed to obtain an express guilty plea from him, in violation of the Fifth and Sixth Amendments. He argues that due process requires a deliberate and unequivocal declaration of guilt in response to the question "How do you plead?" before a court may accept a defendant's putative plea of guilty. Moriarty further argues that the district court plainly erred under Rule 11 when it failed to inform him of: (1) the Government's right to prosecute him for perjury for any statement that he made under oath; (2) his right to plead not guilty or persist in an original plea of not guilty; (3) his right to be represented by counsel,

9

and, if necessary, have counsel appointed; (4) the possibility of forfeiture; (5) the

court's authority to order restitution; and (6) the court's duty to apply the

Guidelines.

Moriarty concedes that he failed to raise any of the foregoing issues before

the district court.[2]  Constitutional objections not raised before the district court are

reviewed only for plain error.  *United States v. Candelario*, 240 F.3d 1300, 1306

(11th Cir. 2001).  Likewise, when a defendant fails to object to a Rule 11

violation, we review only for plain error.  *United States v. Vonn*, 535 U.S. 55, 59,

122 S. Ct. 1043, 1046, 152 L. Ed. 2d 90 (2002).    To establish plain error, a

defendant must show there is (1) error, (2) that is plain, and (3) that affects

substantial rights.  *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770,

1776, 123 L. Ed. 2d 508 (1993).  If all three conditions are met, we may exercise

our discretion to recognize a forfeited error, but only if the error "seriously

affect[s] the fairness, integrity or public reputation of judicial proceedings."  *Id.*

(internal quotations omitted) (alteration in original).  Under plain error review,

"the defendant bears the burden of persuasion with respect to prejudice or the

effect on substantial rights."  *United States v. Monroe*, 353 F.3d 1346, 1352 (11th

---

[2] Moriarty should have brought these issues to the district court's attention prior to appeal, by means of a motion to withdraw his plea.

Cir. 2003). When neither the Supreme Court nor this Court has resolved an issue, and other circuits are split on it, there can be no plain error in regard to that issue. *United States v. Aguillard*, 217 F.3d 1319, 1321 (11th Cir. 2000) (per curiam).

A guilty plea involves the waiver of a number of a defendant's constitutional rights, and must therefore be made knowingly and voluntarily to satisfy the requirements of due process. *See Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1468-69, 25 L. Ed. 2d 747 (1970); *Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002). A court accepting a guilty plea must comply with Rule 11 and specifically address three "core principles," ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea. *United States v. Jones*, 143 F.3d 1417, 1418-19 (11th Cir. 1998) (per curiam). To ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea, including: the right to plead not guilty (or persist in such a plea) and to be represented by counsel; the possibility of forfeiture; the court's authority to order restitution and its obligation to apply the Guidelines; and the Government's right, in a prosecution for perjury, to use against the defendant

11

any statement that he gives under oath.  *See* Fed. R. Crim. P. 11(b)(1)(A)-(B), (D), (J)-(K), (M).

The plea colloquy employed by the district court failed to inform Moriarty of the foregoing matters as required by Rule 11.  The requirements of Rule 11 are not aspirational but mandatory, and deserve the careful attention of the district courts.  *See Monroe*, 353 F.3d at 1351.  We depend upon both the district court and counsel to avoid confusion over a defendant's plea by ensuring that at the plea colloquy, preferably at the outset, the defendant is asked: "How are you pleading to (each of) Count(s) _____ as set forth in the Indictment [or Information, if applicable]: guilty or not guilty?"  When left unperformed, such tasks needlessly generate issues for appeal that consume the increasingly scarce resources of this Court.[3]

Although we acknowledge the deficiencies in the plea colloquy employed by the district court, they do not necessarily render Moriarty's plea invalid.  Moriarty does not cite, and our research has not uncovered, any Supreme Court or Eleventh Circuit case holding that due process requires district courts to elicit an

---

[3] This has become a recurring problem in the Eleventh Circuit.  *See, e.g.*, *United States v. Hernandez-Fraire*, 208 F.3d 945 (11th Cir. 2000); *United States v. Ortiz*, No. 98-3698, 203 F.3d 839 (11th Cir. 1999) (per curiam) (unpublished); *United States v. Leija-Vasquez*, No. 99-2367, 192 F.3d 131 (11th Cir. 1999) (per curiam) (unpublished).

express guilty plea in the manner posited by Moriarty. *See Aguillard*, 217 F.3d at 1321. Moriarty argues that a valid guilty plea cannot be presumed "from a silent record." *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274 (1969). The record in the instant case, however, is not silent.[4] When the district court asked Moriarty whether he was pleading guilty because he was guilty or for some other reason, Moriarty unequivocally responded: "Because I am guilty." Moriarty further admitted to downloading child pornography, and his counsel made no objection to, or attempt to qualify, the Government's factual proffer. To the contrary, Moriarty's counsel emphasized that Moriarty wanted "to accept responsibility for his conduct." Finally, Moriarty does not cite, and we do not find, anything in the record indicating that he meant to plead other than guilty. Thus, the district court's failure to elicit an express declaration of Moriarty's guilty plea was not plain error.

As for the remainder of Moriarty's Rule 11 claims, the district court did commit plain error in failing to advise him of all the information contained in Rule 11(b)(1). *See Monroe*, 353 F.3d at 1351. Nevertheless, "[a] variance from the requirements of [Rule 11] is harmless error if it does not affect substantial rights."

---

[4] In considering whether a Rule 11 error occurred or prejudiced a defendant, we may consider the whole record, not just the plea colloquy. *See Monroe*, 353 F.3d at 1350 n.3.

Fed. R. Crim. P. 11(h); *Monroe*, 353 F.3d at 1353 n.6. Indeed, "a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, __, 124 S. Ct. 2333, 2340, 159 L. Ed. 2d 157 (2004). Moriarty does not even attempt to carry this burden, and nothing in the record indicates that, but for the district judge's error, Moriarty would not have entered his guilty plea. In fact, at the plea colloquy Moriarty's counsel explained that one reason Moriarty had decided to plead guilty was to avoid going to trial.[5] Accordingly, we affirm Moriarty's convictions.

B.    *Sentencing*

1.    Booker *Error*

Moriarty contends that the district court committed both constitutional and statutory errors under *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738, 160

---

[5] Although Moriarty offers no reason why he would not have pled guilty if he had received more thorough instructions under Rule 11, he compares his case to *Hernandez-Fraire*. That case involved an "almost total failure" to address the third core concern of Rule 11. *See Monroe*, 353 F.3d at 1355; *Hernandez-Fraire*, 208 F.3d at 950-51. By contrast, Moriarty's counsel admits that the district court in the instant case at least "touch[ed] on" the right to a jury trial, the right to confront and cross-examine witnesses, and the right to compel attendance of witnesses. Furthermore, the defendant in *Hernandez-Fraire* expressed confusion during the plea colloquy as to the nature of his rights. *See Hernandez-Fraire*, 208 F.3d at 950-51. No such confusion appeared in Moriarty's plea colloquy. Thus, *Hernandez-Fraire* does not control the outcome of the instant case.

L. Ed. 2d 621 (2005), when it applied a sentencing enhancement under Guidelines § 2G2.2(b)(4) and treated the Guidelines as mandatory. As Moriarty raised this issue below, our review is *de novo*, though we will vacate and remand only for harmful error. *See United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005) (per curiam). Section 2G2.2(b)(4) provides for a five-level enhancement where "the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." U.S.S.G. § 2G2.2(b)(4) (2003). The Government concedes that the district court committed constitutional and statutory *Booker* error when it applied this enhancement under a mandatory Guidelines scheme based upon facts that were not admitted by Moriarty (or found by a jury). *See United States v. Rodriguez*, 398 F.3d 1291, 1297-98 (11th Cir.), *cert. denied*, ___ U.S. ___, 125 S. Ct. 2935, 162 L. Ed. 2d 866 (2005).

We may disregard preserved constitutional *Booker* error only when the Government proves that the error did not affect the substantial rights of the parties; that is, that the error was harmless beyond a reasonable doubt. *Paz*, 405 F.3d at 948. "'This standard is met only where it is clear beyond a reasonable doubt that the error complained of did not contribute to the [sentence] obtained.'" *Id.* (quoting *Candelario*, 240 F.3d at 1307 (internal quotes omitted)) (alteration in original). Although this is a high burden, it is not insurmountable. *See United*

15

*States v. Robles*, 408 F.3d 1324, 1327 (11th Cir. 2005) (per curiam).  In the instant

case, the district judge applied the five-level enhancement to reach a total offense

level of 37, criminal history category two–and thus a sentencing range of 235-293

months.  As the Government points out, the district court then sentenced Moriarty

to 240 months–the statutory maximum[6] on his more serious offenses–and a

lifetime of supervised release, commenting that Moriarty was "going to endanger

the lives of young children in the future," and needed to be "taken out of society

so it can be prevented."  Thus, this is not a case where we "simply do not know"

what the district court would have done under an advisory Guidelines scheme.  *See*

*United States v. Davis*, 407 F.3d 1269, 1271 (11th Cir. 2005) (per curiam).  Given

the severity of the sentence imposed, the lifelong term of supervised release, and

the district court's expressed intent to take Moriarty "out of society," it is clear

beyond a reasonable doubt that the district court would not have imposed a lesser

sentence under an advisory Guidelines scheme, and the constitutional *Booker* error

was therefore harmless.   The statutory *Booker* error was likewise harmless, for

this error is subject to a less demanding standard of review than the "harmless

---

[6] Although in theory the district court could have imposed consecutive sentences at the statutory maximum on each count–totaling 50 years–this would have far exceeded the range recommended by the Guidelines, which the district judge treated as mandatory, and which tend to favor the grouping of closely related counts and the imposition of concurrent sentences.  *See* U.S.S.G. §§ 3D1.1-1.5; 5G1.2 (2003).

beyond a reasonable doubt" standard that the Government has already satisfied. *See United States v. Mathenia*, 409 F.3d 1289, 1291-92 (11th Cir. 2005) (per curiam).

2.      *Section 2G2.2(b)(4)*

Moriarty also argues that the district court's inclusion of the § 2G2.2(b)(4) five-level enhancement in its Guidelines calculations was not supported by a preponderance of the evidence.[7]  "We review a district court's factual findings for clear error and its application of the Sentencing Guidelines to those facts *de novo*." *United States v. Phillips*, 413 F.3d 1288, 1292 (11th Cir. 2005) (per curiam) (emphasis added).

"When a defendant objects to a factual finding that is used in calculating his guideline sentence . . . the government bears the burden of establishing the disputed fact by a preponderance of the evidence." *Rodriguez*, 398 F.3d at 1296. According to Moriarty, the application of § 2G2.2(b)(4) was not supported by a preponderance of the evidence because the district court failed to make any factual, reliability, or credibility findings regarding the applicability of § 2G2.2(b)(4).  However, "a sentencing court's failure to make individualized

_____

[7] We note that even in the post-*Booker* era, district courts still have the obligation to calculate the applicable Guidelines range accurately.  *See United States v. Crawford*, 407 F.3d 1174, 1179 (11th Cir. 2005).

17

findings regarding the scope of the defendant's activity is not grounds for vacating a sentence if the record support [sic] the court's determination with respect to the offense conduct . . . ." *United States v. Petrie*, 302 F.3d 1280, 1290 (11th Cir. 2002); *cf. United States v. Saunders*, 318 F.3d 1257, 1269 n.18 (11th Cir. 2003) (holding that where sentencing court did not depart from Guidelines range and clearly resolved all disputed factual issues in favor of presentence report, the failure to make explicit findings of fact and conclusions of law was not clear error).

Section 2G2.2(b)(4) applies if "the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor," and contains the following application note:

> "Pattern of activity involving the sexual abuse or exploitation of a minor" means any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same or different victims; or (C) resulted in a conviction for such conduct.

U.S.S.G. § 2G2.2 cmt. n.1 (2003).[8]  At sentencing, one of Moriarty's neighbors testified to a number of facts indicating that on one occasion, Moriarty had broken

---

[8] "'Sexual abuse or exploitation' means conduct constituting criminal sexual abuse of a minor, sexual exploitation of a minor, abusive sexual contact of a minor, any similar offense under state law, or an attempt or conspiracy to commit any of the above offenses." U.S.S.G. § 2G2.2 cmt. n.1 (2003).  It does not include "trafficking in material relating to the sexual abuse or exploitation of a minor." *Id.*

into her six-year old son's bedroom, sexually assaulted him, and stolen his pull-up pajama pants. Subsequent testimony from an FBI agent–including testimony about the graphically detailed "Spy Reports" compiled by Moriarty himself–corroborated the mother's version of events, and indicated that Moriarty had sexually abused and exploited the child, as well as other children, on numerous occasions. Having reviewed the record, we conclude that the district court did not commit clear error in applying § 2G2.2(b)(4). *Cf. United States v. Richardson*, 304 F.3d 1061, 1066 (11th Cir. 2002) ("We have examined [the witness's] testimony and find no fault in the court's decision to believe what she said. We therefore reject appellant's challenge to the court's application of § 2G2.2(b)(4).").

3. *Downward Adjustment*

Moriarty further contends that the district court erred in denying him a downward adjustment under § 3E1.1 of the Guidelines, for acceptance of responsibility. We review the district court's determination for clear error. *United States v. Brenson*, 104 F.3d 1267, 1288 (11th Cir. 1997). "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1 cmt. n.5 (2003). Thus, we will not set aside a

19

district court's determination that a defendant is not entitled to a § 3E1.1 adjustment unless the facts in the record clearly establish that the defendant has accepted responsibility. *United States v. Sawyer*, 180 F.3d 1319, 1323 (11th Cir. 1999).

"The defendant bears the burden of clearly demonstrating acceptance of responsibility and must present more than just a guilty plea." *Id.* Although a guilty plea can constitute significant evidence of acceptance of responsibility, it may be outweighed by conduct of the defendant inconsistent with an acceptance of responsibility. *See* U.S.S.G. § 3E1.1 cmt. n.3 (2003). Moriarty argues that he was entitled to a § 3E1.1 adjustment because he did not take the Government to trial, conceded the applicability of all Guidelines enhancements except for one, and submitted an acceptance of responsibility letter to probation.[9] He notes that "a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction [for acceptance of responsibility]." *Id.* cmt. n.1(a). Likewise, a defendant "may remain silent in

---

[9] Moriarty also argues that the district court's determination was "without foundation" because the court did not place its rationale on the record. It appears from the record, however, that the district court adopted the PSR, which determined that Moriarty had not accepted responsibility for his criminal conduct because he was contesting facts established at the plea hearing and attempting to minimize his offense conduct after pleading guilty. Moriarty's acceptance of responsibility letter stated little more than that he, "essentially, possessed child pornography when [he] knew it was against the law to do so," was "deeply sorry," and promised "never to do anything like this again."

20

respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction [for acceptance of responsibility]." *Id.*

As the Government points out, however, "'a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.'" *United States v. Williams*, 408 F.3d 745, 756 (11th Cir. 2005) (per curiam) (quoting U.S.S.G. § 3E1.1 cmt. n.1(a)). Having considered the record, including Moriarty's opposition to the § 2G2.2(b)(4) enhancement that was supported by his own "Spy Reports," we hold that the district court did not commit clear error in denying Moriarty an adjustment for acceptance of responsibility.

4.    *Supervised Release*

Moriarty contends that the district court's imposition of a lifelong term of supervised release constitutes cruel and unusual punishment in violation of the Eighth Amendment, and was also an improper departure from the Guidelines recommendation. We review *de novo* the legality of a sentence, including the imposition of a term of supervised release. *United States v. Tatum*, 998 F.2d 893, 894 (11th Cir. 1993) (per curiam), *abrogated on other grounds by Johnson v. United States*, 529 U.S. 694, 120 S. Ct. 1795, 146 L. Ed. 2d 727 (2000). Moriarty did not raise his Guidelines objection below, however, and we therefore review

21

that matter only for plain error. *See United States v. Neely*, 979 F.2d 1522, 1523 (11th Cir. 1992) (per curiam).

Initially, we note that 18 U.S.C. § 3583(k) authorized the imposition of a lifelong term of supervised release only as to Counts One and Two. *See* 18 U.S.C. §§ 2252A, 3583(k).[10] Although a guilty plea to violations of 18 U.S.C. § 1466A(a) subjects the offender to "the penalties provided in section 2252A(b)(1)," a lifelong term of supervised release is not a penalty provided *in* § 2252A(b)(1). *See* 18 U.S.C. §§ 1466A(a), 2252A(b)(1). Rather, § 3583(k) separately authorizes a term of supervised release of "any term of years or life" for certain offenses, including those contained in § 2252A. *See id.* § 3583(k). Section 1466A, however, is *not* listed among these provisions, and the list appears to be exclusive and comprehensive. *See id.* Thus, the maximum term of supervised release applicable to Count Three, a class C felony, is three years. *See id.* §§ 3559(a), 3583(b). Because a lifelong term of supervised release exceeds that statutory maximum on Count Three, and because the district court imposed a lifelong term of supervised release as part of a general sentence, *see infra*, we must remand for

---

[10] While Moriarty does not raise this issue in so many words, we reach it because it is essentially interwoven with his claim that a lifelong term of supervised release exceeded the limits set forth in Guidelines § 5D1.2, which reflect in part the limits imposed by 18 U.S.C. § 3583(b).

clarification as to the term of supervised release imposed on Count Three.

Nevertheless, given that the lifetime term of supervised release was statutorily

authorized on Counts One and Two, we will reach Moriarty's Eighth Amendment

claim.[11]

"The Eighth Amendment, which forbids cruel and unusual punishments,

contains a narrow proportionality principle that applies to noncapital sentences."

*Ewing v. California*, 538 U.S. 11, 20, 123 S. Ct. 1179, 1185, 155 L. Ed. 2d 108

(2003) (internal quotes omitted). "The Supreme Court has made it clear that

'[o]utside the context of capital punishment, *successful* challenges to the

proportionality of sentences [are] exceedingly rare.'" *United States v. Raad*, 406

F.3d 1322, 1323 (11 Cir.) (per curiam) (quoting *Solem v. Helm*, 463 U.S. 277,

289-90, 103 S. Ct. 3001, 3009, 77 L. Ed. 2d 637 (1983)) (emphasis and alterations

---

[11] As we are remanding for clarification of the term of supervised release imposed on Count Three, we need not further address Moriarty's claim that the lifelong term of supervised release departed from the Guidelines, at least with respect to Count Three. As to Counts One and Two, we reject Moriarty's claim that imposition of the lifelong term authorized by § 3583(k) constitutes an improper departure from the Guidelines. *See* 18 U.S.C. § 3583(k); *United States v. Eggersdorf*, 126 F.3d 1318, 1320 (11th Cir. 1997) ("The statute controls in the event of a conflict between the guideline and the statute."). Indeed, the Guidelines were amended in 2004 to "make[] § 5D1.2 (Term of Supervised Release) consistent with changes made by the PROTECT Act regarding the applicable terms of supervised release under 18 U.S.C. § 3583 for sex offenders." U.S.S.G. supp. to app. C, amend. 664, at 63 (2004). Furthermore, the Guidelines in 2003 and 2004 recommended the statutory maximum term of supervised release where the offense of conviction was a sex offense. *See* U.S.S.G. §§ 5D1.2(c) (2003), 5D1.2(b) (2004).

in original), *cert. denied*, ___ U.S. ___, ___ S. Ct. ___, ___ L. Ed. 2d ___ (2005).

On Eighth Amendment challenges,

> a reviewing court must make a threshold determination that the sentence imposed is grossly disproportionate to the offense committed and, if it is grossly disproportionate, the court must then consider the sentences imposed on others convicted in the same jurisdiction and the sentences imposed for commission of the same crime in other jurisdictions.

*Id.* (quoting *United States v. Reynolds*, 215 F.3d 1210, 1214 (11th Cir. 2000) (per curiam)). "In general, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *United States v. Delacruz-Soto*, 414 F.3d 1158, 1168 (10th Cir. 2005).

Moriarty nevertheless argues that a lifelong term of supervised release is cruel and unusual in light of his age (21), his experience of years of sexual abuse at the hands of a neighborhood pedophile and his own father, and his repeated exposure to deviant sexual materials as a child. Whatever relevance these facts may have to the degree of moral responsibility Moriarty bears for his actions, they do not lessen the need for supervised release. "Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *Johnson*, 529 U.S. at 59, 120 S. Ct. at 1118. For example, the House Conference

Report on the PROTECT Act, which authorized the imposition of lifelong terms of supervised release under 18 U.S.C. § 3583(k), states in relevant part:

> This section responds to the long-standing concerns of Federal judges and prosecutors regarding the inadequacy of the existing supervision periods for sex offenders, particularly for the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison. The current length of the authorized supervision periods is not consistent with the need presented by many of these offenders for long-term–and in some cases, life-long–monitoring and oversight.

H.R. Conf. Rep. No. 108-66, at 49-50 (2003), *reprinted in* 2003 U.S.C.C.A.N. 683, 684. Having considered the record, including the connection between Moriarty's possession of child pornography and his apparent propensity for engaging in the sexual abuse of children, we conclude that a lifetime term of supervised release is not grossly disproportionate to his child pornography offenses under 18 U.S.C. § 2552A, and his Eighth Amendment claim therefore fails.

5.      *General Sentence*

Finally, Moriarty argues that the district court erred by imposing a general sentence of 20 years when the statutory maximum on Count Two was 10 years. As stated above, we review the legality of a sentence *de novo*. *See Tatum*, 998 F.2d at 894. "'A general sentence is an undivided sentence for more than one

count that does not exceed the maximum possible aggregate sentence for all the counts but does exceed the maximum allowable sentence on one of the counts.'" *Jones v. United States*, 224 F.3d 1251, 1259 (11th Cir. 2001) (quoting *United States v. Woodard*, 938 F.2d 1255, 1256 (11th Cir. 1991) (per curiam)). Such sentences are *per se* illegal in this circuit, and require a remand. *See id.* at 1259-60. Here, the district judge's 20-year sentence exceeds the statutory maximum of 10 years on Count Two. *See* 18 U.S.C. § 2252A(b)(2). It is difficult to determine the intention of the district court. Accordingly, we must vacate Moriarty's sentence and remand for clarification as to the sentence imposed on each count of conviction.

### III. CONCLUSION

Although we affirm Moriarty's convictions, the district court erred by imposing a general sentence. We therefore vacate the sentence and remand the case for clarification of the sentence, including the term of supervised release, applicable to each count to which Moriarty pled.

AFFIRMED IN PART, VACATED IN PART, and REMANDED.