[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11522
Non-Argument Calendar

_____

D.C. Docket No. 8:10-cr-00407-JSM-AEP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIGUEL ANTHONY MOLINA,
a.k.a. Pito,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 20, 2013)

Before TJOFLAT, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Miguel Anthony Molina appeals his convictions and sentences for possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), and distributing heroin, in violation of 21 U.S.C. § 841(a)(1) and

(b)(1)(C).  On appeal, he argues that: (1) the government failed to present sufficient evidence to rebut beyond a reasonable doubt his defense of entrapment; and (2) the court erred in setting his offense level as an armed career criminal at 34, under U.S.S.G. § 4B1.4(b)(3)(A), based on its conclusion that he possessed a gun in connection with a drug offense.  After careful review, we affirm.

We review challenges to the sufficiency of the evidence to rebut an entrapment defense de novo.  United States v. Francis, 131 F.3d 1452, 1456 (11th Cir. 1997).  We are limited to determining whether the government presented sufficient evidence for a reasonable jury to conclude that the defendant was predisposed to take part in the crime.  Id.  A jury's verdict cannot be overturned if any reasonable construction of the evidence would allow the jury to find the defendant guilty beyond a reasonable doubt.  United States v. Brown, 43 F.3d 618, 622 (11th Cir. 1995).  On sufficiency review, we view all evidence and make all inferences in favor of the government and cannot overturn the verdict if any reasonable construction of the evidence would allow for a guilty verdict.  Francis, 131 F.3d at 1456.  As for Molina's challenge to the court's Sentencing Guidelines determination, we review the argument for plain error, because he did not object to this issue below.  United States v. Barrington, 648 F.3d 1178, 1195 (11th Cir. 2011), cert. denied, 132 S.Ct. 1066 (2012).  To establish plain error, a defendant must show: (1) there is error; (2) that is plain; and (3) affected his substantial

rights; and if those three prongs are met, we have discretion to correct an error (4) that seriously affected the fairness, integrity or public reputation of judicial proceedings. United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005).

First, we are unpersuaded by Molina's claim that the government presented insufficient evidence to rebut his entrapment defense. The elements of the affirmative defense of entrapment are: (1) government inducement of the crime; and (2) the defendant's lack of predisposition to commit the crime before the inducement. United States v. Orisnord, 483 F.3d 1169, 1178 (11th Cir. 2007). The defendant bears the initial burden of production on the first element and may meet this burden "by producing any evidence sufficient to raise a jury issue that the government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it." Id. (quotation omitted). Once the defendant meets this burden, the government must then prove beyond a reasonable doubt that the defendant was predisposed to commit the offense. Id.

The defendant's burden of production to show government inducement is "light." Brown, 43 F.3d at 623. However, "the government's mere suggestion of a crime or initiation of contact is not enough." Id. Rather, inducement requires "an element of persuasion or mild coercion." Id. We have also explained that "inducement consists of opportunity plus something like excessive pressure or manipulation of a non-criminal motive." Id. The Supreme Court has said that,

3

where a government agent simply provides a defendant with the opportunity to commit a crime and the defendant accepts, the entrapment defense "is of little use because the ready commission of the criminal act amply demonstrates the defendant's predisposition." Jacobson v. United States, 503 U.S. 540, 549-50 (1992). It went on to note that, in a case like that, "it is unlikely that [an] entrapment defense would [] warrant[] a jury instruction." Id. at 550.

In Orisnord, the defendants argued that there was insufficient evidence of their predisposition to commit the charged offenses. 483 F.3d at 1177-78. We, however, did not reach the issue of predisposition because we determined that the defendants failed to meet their burden of production on the inducement element. Id. at 1178. Because nothing in the record demonstrated that the government had to "push" the scheme on the defendants or that any of the defendants expressed a refusal to participate, the defendants failed to meet their burden. Id.

Here, Molina failed to meet his burden of production that the government induced him to commit a criminal offense. The evidence of entrapment comes solely from Molina's testimony. In support of the defense, he testified that he sold the undercover officer the gun only because the government's confidential informant ("CI") wanted him to sell the gun. He also testified that the CI explained that Molina had to sell the gun because the undercover would not purchase it from the CI, who owed money to the undercover. However, beyond

4

that explanation, Molina put forth no evidence that the CI had to do anything more than ask him to sell the gun. While Molina put forth testimony that he had no interest in handling or dealing in guns, his claimed lack of a predisposition to deal in guns is irrelevant if he failed to meet his burden of production that the government induced him to sell the gun. See Orisnord, 483 F.3d at 1178. Thus, just as in Orisnord, because nothing in the record demonstrates that the government had to "push" or otherwise encourage Molina to possess the gun, albeit temporarily and for the sole purpose of selling it, and Molina put forth no evidence that he initially refused or was reluctant to sell the gun for the CI, Molina failed to meet his burden of production even if we take his testimony at face value.

We are also unconvinced by Molina's claim that the court plainly erred in setting his offense level as an armed career criminal at 34, based on its conclusion that he possessed a gun in connection with a drug offense. Under the Guidelines, a defendant considered to be an armed career criminal receives an offense level of "(A) 34, if the defendant used or possessed the firearm or ammunition in connection with . . . a controlled substance offense, as defined in § 4B1.2(b), . . . or (B) 33, otherwise." U.S.S.G. § 4B1.4(b)(3). In United States v. Young, we held that the "in connection with" language of § 4B1.4(b)(3) must be construed according to its ordinary meaning. 115 F.3d 834, 836 (11th Cir. 1997). We concluded that, where a gun was obtained as the fruit of a burglary, the "in

5

connection with" language was satisfied because it properly reflected the context of the gun possession. Id. at 837-38. We also rejected the holding of other circuits that "in connection with" is only satisfied where the firearm serves a purpose related to the crime. Id. at 838. We thus have found the application of the § 4B1.4(b)(3)(A) provision appropriate where a defendant was arrested while simultaneously possessing heroin and a gun, because "the presence of the gun potentially emboldened [the defendant] to undertake illicit drug sales." United States v. Gainey, 111 F.3d 834, 837 (11th Cir. 1997).

Here, the fact that Molina possessed the gun and heroin simultaneously is sufficient for a conclusion that Molina possessed a gun in connection with a drug offense. See id.; see also United States v. Carrillo-Ayala, 713 F.3d 82, 96 (11th Cir. 2013). For starters, the evidence does not conclusively show that Molina did not possess the gun at any point during the discussion of a heroin transaction. Rather, the record shows that Molina did not negotiate a price for the gun until after he discussed the heroin. Further, contrary to Molina's suggestion that the heroin transaction was wholly separate and occurred only after the sale of the gun was finalized and Molina relinquished possession of the gun, the record reflects that the CI referred to the heroin transaction as "the other matter that we agreed the other day." This indicates that when Molina possessed the gun, the parties understood the potential for a heroin transaction, and Molina possessed the heroin.

6

Accordingly, even though the record does not show that Molina had a loaded gun in his pocket while possessing heroin, the simultaneous possession here is enough to demonstrate that the court did not plainly err in imposing an offense level of 34.

**AFFIRMED.**