[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12998
Non-Argument Calendar
_____

D.C. Docket No. 0:12-cr-60077-KMW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GEORGE ELIA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 2, 2014)

Before MARTIN, KRAVITCH, and ANDERSON, Circuit Judges.

PER CURIAM:

George Elia appeals his 144-month sentence imposed after he pleaded guilty to one count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 371, and nine counts of wire fraud, in violation of 18 U.S.C. § 1343.  Elia challenges the district court's application of the United States Sentencing Guidelines (USSG) to determine his offense level.  After careful review, we affirm.

I.

Elia was convicted for his participation in a large Ponzi scheme that eventually ensnared several victims who together lost millions of dollars.  From at least 2005 through 2011, Elia and his coconspirator, James Ellis, convinced the victims to allow Elia to make investment decisions on their behalf.  Elia and Ellis told investors that, if they transferred funds to Elia's equity management company, he would invest their money in publicly traded common stocks and generate high rates of return.  Elia provided some investors regular payments, supposedly the earnings from Elia's investments, and (false) statements about the performance of their investment.  Elia made some investments with the money he received, but primarily used the funds to keep up the Ponzi scheme and to enrich himself.

Elia pleaded guilty after three days of witness testimony in his jury trial.  At sentencing, the district court determined that Elia had an offense level of 33 and a criminal history category of I, resulting in a guideline range of 135- to 168-months imprisonment.  In this appeal, Elia complains that the district court (1) improperly

2

enhanced his sentence by four levels pursuant to USSG § 2B1.1(b)(18)(A)(iii) (2012),[1] which applies when the offense involves a securities law violation committed by an investment adviser; and (2) erroneously refused to reduce his offense level by two levels pursuant to USSG § 3E1.1(a), which permits a reduction if the defendant has accepted responsibility for his conduct.

## II.

When reviewing a sentence enhancement under the Guidelines, we review factual findings for clear error and the application of the Guidelines to those facts de novo.  United States v. Lozano, 490 F.3d 1317, 1321 (11th Cir. 2007). Applying those standards here, we have no trouble affirming the district court's decision to treat Elia as an investment advisor as that term is defined in the Guidelines.

Under the Guidelines, a four-level increase is applied when the offense involves "a violation of securities law and, at the time of the offense, the defendant was . . . an investment adviser, or a person associated with an investment adviser." USSG § 2B1.1(b)(18)(A)(iii).[2]  An investment adviser is:

---

[1] All references to the Guidelines throughout this opinion refer to the 2012 version pursuant to which Elia was sentenced.  The location of the investment adviser enhancement in the Guidelines has changed since then, but substantively remains the same.

[2] Elia also argued before the district court that the enhancement should not be applied because he was not convicted of violating a securities law.  The district court agreed with the government that because his conduct "involved" a violation of securities law, it did not matter that Elia was not actually convicted under a particular securities statute or regulation.  See USSG

any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities.

15 U.S.C. § 80b-2(a)(11);[3] see also USSG § 2B1.1, comment. (n.14(A)) ("'Investment adviser' has the meaning given that term in section 202(a)(11) of the Investment Advisers Act of 1940 (15 U.S.C. § 80b-2(a)(11)).").

Applying this definition, the district court properly concluded that Elia acted as an investment adviser. Elia stresses that he had no training and no license to give investment advice, and cites to several cases in which the enhancement has been applied to registered brokers and dealers. But the definition of investment adviser does not depend on the defendant's formal education or licensing. Instead, the definition focuses on the defendant's business practice and how he holds himself out to investors. See United States v. Elliott, 62 F.3d 1304, 1310 (11th Cir. 1995)[4] (noting that the Securities and Exchange Commission interpretive guidance

§ 2B1.1(b)(18)(A). Elia makes a passing reference to this argument in his brief on appeal, but does not develop it. We therefore do not consider it. See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (noting that mere "passing references" will not preserve the argument for appeal).

[3] There are some specific exclusions from this definition, but Elia has waived any argument that one of the exclusions might apply to him by not arguing it in his opening brief. United States v. Levy, 416 F.3d 1273, 1275–76 (11th Cir. 2005) (per curiam).

[4] Elliott interprets "investment adviser" as it is defined in 15 U.S.C. § 80b-2(a)(11), but not for the purpose of reviewing a Guidelines enhancement. This makes no difference. The

provides that relevant factors in considering whether someone is an "investment adviser" include whether the defendant "(1) Provides advice, or issues reports or analyses, regarding securities; (2) is in the business of providing such services; and (3) provides such services for compensation" (emphasis omitted)).

That the term "investment adviser" does not require formal licensing becomes even more clear when looking at USSG § 2B1.1(b)(18)(A) as a whole. Subsection (ii) of that provision allows the enhancement to be applied if the defendant was "a registered broker or dealer, or a person associated with a broker or dealer." USSG § 2B1.1(b)(18)(A)(ii). Elia's position that a license is required for enhancement pursuant to subsection (iii) would thus render subsection (ii) entirely superfluous. This result is inconsistent with both the plain language of subsections (ii) and (iii) and the rule of statutory interpretation that language in one part of a statute should not be interpreted in a way that renders language in another part meaningless. United States v. Aldrich, 566 F.3d 976, 978 (11th Cir. 2009) ("[S]tatutes should be construed so that no clause, sentence, or word shall be superfluous, void, or insignificant." (quotation marks omitted)).

Elia was properly sentenced as an investment advisor, despite his argument that he did not invest the money as promised. First, the government explained

---

investment adviser enhancement fully adopts the definition of that term in 15 U.S.C. § 80b-2(a)(11), without qualification.

5

during the change of plea hearing that it was prepared to introduce evidence that Elia did in fact make some investments. Elia agreed that the facts set forth by the government were "indeed true and accurate." Beyond that, the definition of "investment adviser" requires only that the defendant give advice or promulgate reports about securities. It does not require that the adviser actually make an investment or act on that advice. See 15 U.S.C. § 80b-2(a)(11); see also United States v. Ogale, 378 F. App'x 959, 960 (11th Cir. 2010) (per curiam) ("Although Ogale never actually used investors' money to trade foreign currencies, his scheme involved 'advising others.'").

It is clear that Elia was in the business of providing investment advice, even if he was not in the business of making investments. Two witnesses either did testify or were prepared to testify that Ellis and Elia represented that Elia was an investment advisor. The codefendants gave potential investors brochures, with the logo of Elia's "investment" company. These brochures advised people to invest in stocks rather than, for example, government bonds. Elia also advised investors to give him funds so that he could day trade on their behalf to "profit from stock trading on the New York & NASDAQ stock exchanges and certain index funds." Thus, on Elia's and Ellis's advice, potential investors sent money to Elia's investment fund and gave him "complete authority" to make investments. Thus Elia provided investment advice. See Elliott, 62 F.3d at 1310–11.

6

It is just as clear that Elia provided that advice in exchange for compensation. The investment agreements provided for Elia to receive payment for "Legal, Accounting & Organizational costs" as well as some of the investment profits. In reality, Elia compensated himself directly from the investment principal contributed by his victims. This clearly constitutes giving investment advice for compensation. See Elliott, 62 F.3d at 1311 n.8 (noting that the Securities and Exchange Commission defines "compensation for investment advice" as "the receipt of any economic benefit, whether in the form of an advisory fee or some other fee relating to the total services rendered, commissions, or some combination of the foregoing" (emphasis added)); see also Ogale, 378 F. App'x at 960–61 ("The receipt of any economic benefit qualifies as compensation under the Investment Adviser's [sic] Act and thus the investment adviser enhancement. Ogale compensated himself by using investors' money to pay his personal expenses." (citations omitted)).

For these reasons, the district court properly enhanced Elia's sentence pursuant to USSG § 2B1.1(b)(18)(A)(iii).

### III.

Next, we turn to Elia's argument that his sentence should have been reduced for acceptance of responsibility. We review a district court's decision to deny such a reduction for clear error. United States v. Moriarty, 429 F.3d 1012, 1022 (11th

Cir. 2005) (per curiam). "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." Id. (quoting USSG § 3E1.1, comment. (n.5)) (quotation marks omitted).

The Guidelines provide that a defendant's offense level should be decreased by two levels if he "clearly demonstrates acceptance of responsibility for his offense." USSG § 3E1.1(a). The defendant bears the burden of justifying the reduction, "and must present more than just a guilty plea." Moriarty, 429 F.3d at 1023 (quotation mark omitted).

The only factors Elia has identified that he believes warrant application of the acceptance of responsibility reduction are (1) that he pleaded guilty to all offenses charged against him, without a plea agreement, and (2) that he stipulated to almost $10 million in restitution. But Elia pleaded guilty after three days of testimony from seven government witnesses. Cf. USSG § 3E1.1, comment. (n.3) ("Entry of a guilty plea prior to the commencement of trial . . . will constitute significant evidence of acceptance of responsibility . . . ." (emphasis added)). Similarly, the agreement to voluntarily pay restitution came only after he entered his guilty plea. Cf. id. § 3E1.1, comment. (n.1(C)) (noting that whether the defendant makes "voluntary payment of restitution prior to adjudication of guilt" is a relevant factor in determining whether the defendant accepted responsibility

8

(emphasis added)).  Beyond that, Elia initially fled the country "to get away from the SEC and his investors."  Cf. id. § 3E1.1, comment. (n.1(D)) (noting that voluntary surrender to the authorities is a relevant consideration).  For these reasons, the district court did not clearly err when it denied Elia the benefit of the acceptance of responsibility reduction in light of "the course and the history" of his prosecution.

IV.

We affirm the application of the investment adviser enhancement to Elia's sentence as well as the district court's refusal to reduce his sentence for acceptance of responsibility.

However, we grant a limited remand for the purpose of correcting a clerical error in the judgment form.  Cf. United States v. Campos-Diaz, 472 F.3d 1278, 1280 (11th Cir. 2006) (per curiam) ("[W]e may raise the issue of a clerical error in the judgment sua sponte and vacate and remand with instructions that the district court correct the error.").  Elia pleaded guilty to Counts 1 through 10 of the second superseding indictment, which includes one conspiracy count and nine counts of wire fraud in violation of 18 U.S.C. § 1343.  The first page of the second amended judgment correctly reflects that Elia pleaded guilty to Counts 1 through 10 of the second superseding indictment, but lists only one conviction for wire fraud, which

9

it identifies as Count 0.  We vacate and remand for the limited purpose of correcting this error in the judgment form.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**