[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12846

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DANIEL QUINTERO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20050-CMA-3

_____

2                    Opinion of the Court                    22-12846

Before BRANCH, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Daniel Quintero appeals his convictions for conspiracy to possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine while on board a vessel on the high seas subject to the jurisdiction of the United States and possession with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine while on board a vessel on the high seas subject to the jurisdiction of the United States. Quintero argues that the district court erred in denying his motion to dismiss the indictment because 46 U.S.C. § 70502(d)(1)(C) in the Maritime Drug Law Enforcement Act ("MDLEA") is facially unconstitutional, as it defines a "vessel without nationality" to include vessels that are not stateless under international law, and because the MDLEA is unconstitutional as applied to him, because his offense occurred in waters within Panama's Exclusive Economic Zone ("EEZ"), which are not the "high seas" as defined by international law. He further argues for the first time on appeal that the government failed to prove jurisdiction because a claim of nationality (as opposed to registry) does not trigger § 70502(d)(1)(C) and that the MDLEA does not extend to offenses bearing no "nexus" to the United States. The government responds by moving for summary affirmance.

Summary disposition is appropriate either where time is of the essence, such as "situations where important public policy issues are involved or those where rights delayed are rights denied," or where "the position of one of the parties is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case, or where, as is more frequently the case, the appeal is frivolous." *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1161-62 (5th Cir. 1969).

When a motion to dismiss the indictment is based on subject matter jurisdictional grounds, we review the district court's denial *de novo*. *United States v. Alfonso*, 104 F.4th 815, 820 (11th Cir. 2024), *cert denied*, No. 24-6177 (U.S. May 19, 2025), *and* No. 24-6691 (U.S. May 19, 2025). Likewise, we review "*de novo* a district court's interpretation of a statute and whether a statute is constitutional." *Id.* (quotation marks omitted). However, we review for plain error a constitutional challenge to a statute that is raised for the first time on appeal. *Id.* at 828.

Plain error occurs where: (1) there is an error; (2) that is plain; (3) that affects the defendant's substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005). "It is the law of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

The MDLEA makes it a crime to "knowingly or intentionally . . . possess with intent to manufacture or distribute, a controlled substance" on board "a [covered] vessel subject to the jurisdiction of the United States," and to conspire to do the same. 46 U.S.C. §§ 70503(a)(1), (e)(1), 70506(b). The Act defines a "vessel subject to the jurisdiction of the United States" as including, in relevant part, "a vessel without nationality." *Id.* § 70502(c)(1)(A). A "vessel without nationality" is defined in the Act to include, in relevant part, "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." *Id.* § 70502(d)(1)(C). The MDLEA "applies even though the act is committed outside the territorial jurisdiction of the United States." *Id.* § 70503(b).

Under Article I, Section 8, Clause 10 of the Constitution, Congress has "three distinct grants of power: (1) the power to define and punish piracies, (the Piracies Clause); (2) the power to define and punish felonies committed on the high Seas, (the Felonies Clause); and (3) the power to define and punish offenses against the law of nations (the Offences Clause)." *Alfonso*, 104 F.4th at 820 (quotation marks omitted, alteration adopted) (citing U.S. Const. art. I, § 8, cl. 10).

In *Alfonso*, the defendants appealed their convictions under the MDLEA that were based on the United States Coast Guard's seizure of their vessel bearing no indicia of nationality in the Dominican Republic's EEZ. 104 F.4th at 818-19. In response to their

challenges that the MDLEA was unconstitutional as applied to them because the Felonies Clause was limited by international law, we noted that we "repeatedly have upheld the MDLEA as a valid exercise of Congress's power to define and punish . . . Felonies on the high Seas." *Id.* at 820 (quotation marks omitted, first alteration added, second alteration in the original). Looking to the meaning of the "high seas" at the time the Constitution was ratified, we concluded that "international law does not limit the Felonies Clause." *Id.* at 821-23, 826. We held that a nation's EEZ is "part of the 'high seas' for purposes of the Felonies Clause in Article I of the Constitution," and thus "enforcement of the MDLEA in EEZs is proper." *Id.* at 823, 827. We noted that we "h[eld] only that customary international law has no bearing on the meaning of the 'high seas' as understood by the Framers at the time they adopted the Felonies Clause. We recognize[d] that there are potentially other instances when international law considerations may inform MDLEA-based challenges." *Id.* at 823 n.10.[1]

---

[1] *Alfonso* also addressed the appellants' constitutional challenge—both facially and as applied—to § 70502(d)(1)(C)'s definition of "vessel without nationality;" appellants argued that MDLEA's definition was unconstitutional because it exceeded the definition of a stateless vessel under customary international law. However, because the *Alfonso* appellants raised this issue for the first time on appeal, the *Alfonso* court held there was no plain error because there was no Eleventh Circuit or Supreme Court case resolving the issue. *Id.* at 828-29. However, as discussed below, our subsequent decision in *United States v. Canario-Vilomar*, 128 F.4th 1374 (11th Cir. 2025), also addressed this issue, and held that MDLEA's definition of a "vessel without nationality" posed no constitutional error at all, a conclusion which followed logically from *Alfonso's* holding

We affirmed these holdings in *United States v. Canario-Vilomar*, in which 2 appellants—one seized in a vessel 37 nautical miles north of Panama, and the other seized in a vessel 145 nautical miles north of Colombia—challenged the district court's jurisdiction, arguing, as relevant here, that the MDLEA exceeded Congress's authority under the Felonies Clause as constrained by international law and that one appellant's arrest did not occur on the high seas because he was arrested in Colombia's EEZ. 128 F.4th 1374, 1376-79 (11th Cir. 2025). We relied on *Alfonso* and similarly concluded that Congress was not constrained by international law in crafting the MDLEA. *Id.* at 1381 ("[W]e reject Lemus and Canario-Vilomar's contention that Congress was constrained by international law in crafting its definition of a stateless vessel or in defining the boundaries of the high seas."). Thus, we rejected an appellant's argument that EEZs were not part of the "high seas" and "that Congress could not reach him merely because he chose to traffic drugs in Colombia's EEZ rather than farther out into the open ocean." *Id.* at 1381-82.

In *Canario-Vilamar*, we also rejected the appellants' argument "that the MDLEA's definition of a vessel without nationality—specifically, the inclusion of vessels for which a claimed nation can neither confirm nor deny registration—is ultra vires." *Id.* Relying on *Alfonso*'s holding that the Felonies Clause is not limited by customary international law, we reasoned that "[i]t follows that

---

that "'the Felonies Clause is not limited by customary international law.'" *Id.* at 1381 (quoting *Alfonso*, 104 F.4th at 826).

international law cannot limit Congress's authority to define 'stateless vessel' for purposes of the MDLEA." *Id.* (citing *Alfonso*, 104 F.4th at 826). We held that there was no constitutional error at all in this MDLEA definition of a vessel without nationality, expanding upon *Alfonso*'s holding that there was no plain error.

"[T]he MDLEA treats the terms 'nationality' and 'registry' as interchangeable throughout § 70502." *United States v. Gruezo*, 66 F.4th 1284, 1291 (11th Cir.), *cert denied*, 144 S. Ct. 178 (2023). "The interchangeability and equivalency of these two terms in the MDLEA is further evidenced by § 70502(d)(1)(C), where the rejection of a master's claim of *registry* is premised on the named country's failure to confirm *nationality*." *Id.* In *Alfonso*, the defendants "made a verbal claim of Columbian *nationality* for the vessel, but Colombia could not confirm or deny *registry* of the vessel, which rendered the vessel stateless and subject to the jurisdiction of the United States under the MDLEA, pursuant to 46 U.S.C. § 70502(d)(1)(C)." *Alfonso*, 104 F.4th at 819 (emphasis added).

The MDLEA is constitutional under the Felonies Clause as applied to drug-trafficking crimes on the high seas without a "nexus" to the United States. *United States v. Cabezas-Montano*, 949 F.3d 567, 587 (11th Cir. 2020).

"Under our prior-panel-precedent rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this Court sitting *en banc*." *Id.* at 1381 (quotation marks omitted, alteration adopted). We have "categorically rejected an

overlooked reason or argument exception to the prior-panel precedent rule." *Id.* (quotation marks omitted).  We have also stated that a panel may not disregard precedent and, thus, that the prior panel precedent rule applies, even if a later panel believes it was wrongly decided.  *United States v. Golden*, 854 F.3d 1256, 1257 (11th Cir. 2017) (citing *Smith v. GTE Corp.*, 236 F.3d 1292, 1303 (11th Cir. 2001) (rejecting an exception to the prior-panel precedent rule "based upon a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at that time")).

Here, we grant the government's motion for summary affirmance because its position is clearly right as a matter of law such that there can be no substantial question as to the outcome of the case.  *See Groendyke Transp., Inc.*, 406 F.2d at 1161-62.  Quintero's arguments are foreclosed by our binding case precedent because we have held that § 70502(d)(1)(C) is not facially unconstitutional, that there is no constitutional error in MDLEA's definition of a "vessel without nationality," and that a nation's EEZ is part of the "high seas" for purposes of the Felonies Clause in Article I of the Constitution and thus enforcement of the MDLEA in EEZs is proper.  *See Alfonso*, 104 F.4th at 820-23, 826-27; *Canario-Vilomar*, 128 F.4th at 1381-82.  Further, we have held that that a claim of nationality triggers § 70502(d)(1)(C) and that the MDLEA extends to offenses bearing no "nexus" to the United States.  *See Gruezo*, 66 F.4th at 1291; *Alfonso*, 104 F.4th at 819; *Cabezas-Montano*, 949 F.3d at 587.  Thus, we affirm Quintero's convictions.

**AFFIRMED.**