[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 16, 2008
THOMAS K. KAHN
CLERK

No. 07-10494
Non-Argument Calendar

_____

D. C. Docket No. 06-80023-CR-KLR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JIMMY OLIVER,
a.k.a. musclecars,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 16, 2008)**

Before CARNES, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Defendant-appellant Jimmy Oliver appeals his convictions and sentences on

the ground that his guilty plea did not comport with Fed. R. Crim. P. ("Rule") 11

and that his sentence is unreasonable. After a thorough review of the record, we conclude that the district court complied with the mandates of Rule 11, the guilty plea was made voluntarily and knowingly, and that the appeal waiver contained in the plea agreement bars Oliver's challenge to his sentences. Accordingly, we affirm the convictions and dismiss the appeal as it pertains to the sentences.

Oliver was indicted on nineteen counts of transporting child pornography, receiving child pornography, attempting to distribute a visual depiction in order to induce a minor to engage in sexually explicit conduct, inducing a minor to engage in sexually explicit conduct for purposes of producing a visual depiction, having custody or control of a minor and permitting the minor to engage in sexually explicit conduct, and possession of child pornography, in violation of 18 U.S.C. §§ 2251 and 2252A. The charges arose after authorities conducting an investigation into activities by a man named Jimmy Dean Carpenter in Montana uncovered emails and images Oliver sent to Carpenter. The images showed Oliver molesting his six-year-old granddaughter "Harley," posing Harley in a manner that exposed her genitalia, and performing oral sex on her.

The day before trial was to commence, Oliver agreed to plead guilty to four counts of inducing a minor to engage in sexually explicit conduct for purposes of producing a visual depiction (Counts 6, 9, 12, and 15), and one count of possession

of child pornography (Count 19). The written plea agreement advised Oliver that he faced a mandatory minimum sentence of fifteen years and a statutory maximum sentence of thirty years for Counts 6, 9, 12, and 15, and a statutory maximum of ten years for Count 19. The agreement also contained a waiver-of-appeal provision, which limited Oliver's right to appeal to circumstances in which, relevant to this appeal, he was sentenced above the statutory maximum sentence.

At the change-of-plea hearing, counsel informed the court that Oliver was pleading guilty against counsel's advice because he wanted to spare his family a trial. She indicated that she had informed Oliver that the plea could result in a life sentence. The court then explained to Oliver the charges, at first mentioning only Counts 6, 12, 15, and 19, but omitting Count 9. In discussing the possible fines the court could impose, however, the court included all five counts. Counsel clarified that the Counts included 6, 9, 15, and 19, omitting Count 12. However, counsel stated that she wanted to ensure that Oliver understood that he could face a total sentence of up to 130 years' imprisonment. Addressing whether the sentences could run consecutively, the court stated, "[g]enerally, we don't do consecutive of this sort of thing. Yes, it is a possibility." Upon questioning, Oliver indicated that he understood the charges and possible sentences. The court further explained the waiver-of-appeal provision, and Oliver admitted that he understood the terms and

3

that he was making his decision knowingly and voluntarily.

The undisputed guidelines calculations determined the guidelines range to be life. Oliver requested a sentence below the range due to his health, personal history, cooperation with the authorities, and his remorse. The government urged the court to impose consecutive sentences.

At a reconstructed sentencing hearing,[1] Oliver moved for a downward departure. Based on the nature and facts of the offenses, the court imposed a sentence of life or 1,560 months' imprisonment, which consisted of 360 months each for Counts 6, 9, 12, and 15, to be served consecutively, and 120 months on Count 19, to run consecutive to the other counts. Although the court could not remember what it had said about appeal rights at the end of the original sentencing hearing, the court admitted that it was likely that it had given the standard appeal language at the conclusion of the hearing, which would have instructed Oliver he could appeal within ten days. At this hearing, however, the court indicated that it did not intend to override the terms of the plea agreement and noted that Oliver was alerted to the waiver provision at the change of plea hearing.

Oliver now appeals, challenging the court's acceptance of his guilty plea and

---

[1] Due to transcription errors, the original version of the sentencing transcript was not usable. Per this court's instruction, the district court and the parties recreated the sentencing hearing with Oliver present.

the reasonableness of his sentences.

## I. Guilty Plea

Oliver first argues that the court failed to ensure that he understood the consequences of his plea, as required by Rule 11(b)(1)(H) in light of the numerous problems at his change-of-plea hearing.

Because Oliver raises this issue for the first time on appeal, we review the validity of his guilty plea for plain error. See United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005). "To establish plain error, a defendant must show there is (1) error, (2) that is plain, and (3) that affects substantial rights." Id. If a defendant meets all three of these conditions, this court may exercise its discretion to recognize the error "only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. (quotation marks omitted). "Furthermore, 'a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea.'"[2] United States v. Evans, 478 F.3d 1332, 1338 (11th Cir.), cert. denied, 128

---

[2] In United States v. Brown, 2008 WL 1869727, at *9 (11th Cir. 2008), this court listed three factors that it would consider in determining the "relative significance of the Rule 11 error on the defendant's plea decision: later protests by the defendant (for example, at sentencing), the overall strength of the government's case, and possible defenses that appear from the record." (citing United States v. Steele, 148 Fed. Appx. 823, 826-27 (11th Cir. 2005) (unpublished)).

S.Ct. 257 (2007) (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83, 124 S.Ct. 2333, 2340 (2004)). "A defendant must thus satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." Dominguez Benitez, 542 U.S. at 83 (quotation marks omitted). In analyzing challenges to a guilty plea, the court may consider the entire record. United States v. Vonn, 535 U.S. 55, 74-76, 122 S.Ct. 1043, 1054-1055 (2002)

A district court accepting a guilty plea must comply with Rule 11 and address the three core concerns that: (1) the guilty plea is voluntary; (2) the defendant understands the nature of the charges; and (3) the defendant understands the consequences of his plea. Moriarty, 429 F.3d at 1019. Informing a defendant about the direct consequences of his plea requires the court to inform the defendant of "any maximum possible penalty, including imprisonment, fine, and term of supervised release." Fed. R. Crim. P. 11(b)(1)(H).

Here, a review of the entire record confirms that the court satisfied the requirements of Rule 11 and adequately informed Oliver of the direct consequences of his plea. First, the penalty sheet and indictment confirmed the statutory maximum sentence for each of Counts 6, 9, 12, and 15 was thirty years' imprisonment. Second, even though the plea agreement did not mention

6

consecutive sentences, at the change-of-plea hearing, the district court specifically stated that it was possible that the sentences could run consecutively.[3] Third, although there was confusion between the court and counsel leading both to omit a count as they discussed the possible sentences, there was a discussion of the total sentence possible, including that the sentences could run consecutively for a total of 130 years' imprisonment. And Oliver indicated that he understood. Fourth, defense counsel admitted that she advised against the plea and notified Oliver that he could be pleading to a life sentence. Nevertheless, Oliver wished to proceed against counsel's advise and plead guilty to spare his family the trial.

In light of the record, Oliver cannot show that the court committed plain error or that he would not have pleaded guilty but for the alleged error. Accordingly, we affirm Oliver's convictions.

## II. Sentences

Oliver next argues that his sentences are unreasonable and that the waiver-of-appeal provision does not bar his claims because the court should consider the statutory maximum to be a single thirty-year sentence, rather than the total of the

---

[3] In United States v. Humphrey, 164 F.3d 585 (11th Cir. 1999), this court concluded that there was no plain error in the district court's failure to inform the defendant that his sentences must run consecutively because neither the Supreme Court nor this court had held that Rule 11 required the defendant be given this information. See also United States v. Saldana, 505 F.2d 628, 628 (5th Cir. 1974) (concluding that there is no violation of Rule 11 when district court fails to tell defendant that sentence about to be imposed would be consecutive to sentence he was already serving).

consecutive sentences.

We review the validity of a sentence appeal waiver provision of a plea agreement de novo. United States v. Weaver, 275 F.3d 1320, 1333 n.21 (11th Cir. 2001). A sentence appeal waiver must be made knowingly and voluntarily and is valid if the government shows either that: (1) the district court specifically questioned the defendant about the waiver; or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver.[4] United States v. Bushert, 997 F.2d 1343, 1350, 1351 (11th Cir. 1993); see also Fed.R.Crim.P. 11(b)(1)(N) (requiring the court to inform the defendant of, and make sure the defendant understands "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence" before accepting a guilty plea).

Here, the district court addressed the waiver provision at the change-of-plea hearing, and Oliver acknowledged that he understood it and was entering into it knowingly and voluntarily. Thus, there is no merit to Oliver's claim that the waiver is not enforceable. Moreover, the fact that the court mentioned the right to appeal after imposing sentence does not negate the validity of the appeal waiver. United States v. Benitez-Zapata, 131 F.3d 1444, 1446-1447 (11th Cir. 1997).

---

[4] A sentence appeal waiver is a direct consequence of a guilty plea, encompassed within the third core concern of Rule 11. Bushert, 997 F.2d at 1351.

With respect to whether Oliver's claims fall within the waiver's exceptions, Oliver's argument is not persuasive. Under the terms of the agreement, Oliver can appeal if the sentence imposed exceeds the statutory maximum. That did not occur in this case. Oliver received the statutory maximum sentence for each count. The fact that the total sentence exceeds the statutory maximum for a single count does not mean Oliver was sentenced above the statutory maximum. Thus, Oliver's claim does not fall within an exception to the waiver provision and his appeal is barred by the waiver. Accordingly, we dismiss the appeal in part on this ground.

**AFFIRMED IN PART; DISMISSED IN PART.**