[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-12133
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 25, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-80073-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANK JACKSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 25, 2010)

Before BARKETT, HULL and FAY, Circuit Judges.

PER CURIAM:

Frank Jackson appeals from his convictions and sentences for conspiracy to possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2, and brandishing a firearm in connection with a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 2. On appeal, he argues that his guilty plea was invalid because the magistrate judge failed to inform him, in accordance with Fed.R.Crim.P. 11(b)(1)(B), that he had the right to plead not guilty and persist in that plea. He contends that this alleged error warrants the reversal of his convictions.

In addition, Jackson seeks to raise two arguments regarding the district court's calculation of his advisory guideline range. Specifically, he argues that the district court erred by increasing his offense level under U.S.S.G. §§ 3A1.2(c)(1) and 3C1.2. The government responds that the appeal-waiver provision in Jackson's plea agreement precludes him from raising these arguments on appeal.

For the reasons set forth below, we affirm.

## I.

In a superseding indictment, a federal grand jury charged Jackson and his codefendants, Anthony Jackson and Michael Singletary, with the following offenses: (1) conspiracy to possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. § 846 ("Count 1"); (2) attempt to possess with

2

intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 ("Count 2"); and (3) brandishing a firearm during and in relation to the drug trafficking crimes set forth in Counts 1 and 2, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 ("Count 3"). Jackson and the government subsequently entered into a written plea agreement, whereby Jackson agreed to plead guilty to Counts 1 and 3 of the indictment, and the government agreed to move to dismiss Count 2.

The plea agreement also included a sentence-appeal waiver. This waiver provided, in relevant part, that:

> [I]n exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Section 3742 to appeal any sentence imposed . . . or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or variance from the guideline range that the court establishes at sentencing. . . .

The agreement was signed by Jackson, his attorney, and the government.

At the guilty plea hearing, Jackson, who was represented by counsel, was placed under oath. The magistrate judge stated, "Now, even though that's what we're here to do this afternoon, is to take a guilty plea[,] I want to make sure that you understand that you are under no obligation whatsoever to plead guilty." Jackson confirmed that he understood this. The magistrate continued,

3

And if you decide that you don't want to plead guilty, anytime during this plea hearing, just raise your hand and say I changed my mind. I want a trial. I don't want to plead guilty. And, nothing that you have told me or the government here this afternoon can be used against you if you decided to go to trial instead of pleading guilty, do you understand that, sir?

Jackson averred that he understood.

In response to questioning by the court, Jackson stated that he had signed the plea agreement and had "read every word [of it]" before he signed it. The magistrate then informed Jackson of his right to have a jury trial, as well as its attendant rights, including his rights to: (1) enjoy a presumption of innocence unless proven guilty beyond a reasonable doubt; (2) be represented by an attorney even if he could not afford an attorney; (3) confront and cross-examine the witnesses against him; (4) call witnesses in his defense and have the court issue subpoenas for such testimony; and (5) choose whether to testify in his own defense. During the course of explaining these rights to Jackson, the court stated:

You are under no obligation whatsoever to come into this Court to plead guilty. You have the absolute right to say I am not guilty. I want a jury trial, and I want twelve people from the community to fill up these chairs to sit as my jury. You have the right to have that jury listen to all the evidence and to decide the verdict; do you understand that?

Jackson stated that he understood these rights. He also stated that, in light of these rights, he still desired to plead guilty.

4

The magistrate reviewed the terms of the plea agreement with Jackson, including the elements of the offenses with which he was charged and the statutory minimum and mandatory sentences applicable to those offenses. In addition, the magistrate specifically addressed the sentencing-appeal waiver, reading it verbatim in open court. The magistrate explained to Jackson that this provision meant that he could not appeal his sentence unless it exceeded the statutory maximum, or constituted an upward departure from his guideline range. The magistrate further explained that Jackson would be released from this provision only if the government appealed from his sentence. Jackson stated that he understood the meaning of the appeal-waiver provision. The magistrate then asked Jackson if anyone had made a promise to him in exchange for his guilty plea, or if anyone had threatened or coerced him into pleading guilty, and Jackson responded that no promises or threats had been made in connection with his plea.

The government then made a factual proffer of the basis for Jackson's offenses. Jackson admitted that these facts were true, and stated that he pled guilty freely and voluntarily. The magistrate found that Jackson's plea was knowing and voluntary, and accepted his guilty plea. Throughout the hearing, Jackson did not raise any objections to the plea colloquy or indicate that he did not wish to plead guilty. Jackson did not file any written objections concerning his plea colloquy.

In preparing Jackson's pre-sentence investigation report ("PSI"), the probation officer found that, pursuant to U.S.S.G. § 2D1.1(a)(3), Jackson's base offense level was 32. The officer increased Jackson's offense level by six levels under U.S.S.G. § 3A1.2(c)(1), because a person for whose conduct Jackson was responsible assaulted a police officer in a manner creating a substantial risk of serious bodily injury. The officer increased Jackson's offense level by another two levels under U.S.S.G. § 3B1.1(c) because he acted as an organizer, leader, manager, or supervisor of criminal activity.

In addition, the probation officer increased Jackson's offense level by another two levels under U.S.S.G. § 3C1.2 because he recklessly created a serious risk of bodily injury to another person while he was fleeing from a law enforcement officer. Finally, the probation officer reduced Jackson's offense level by three levels under U.S.S.G. § 3E1.1(a) and (b) for his acceptance of responsibility. Accordingly, the officer determined that Jackson's total offense level was 39. Based on a total offense level of 39 and Jackson's criminal history category of III, the officer set his guideline range at 324 to 405 months' imprisonment as to Count 1. The officer noted that, as to Count 3, Jackson was required to serve a statutory mandatory minimum term of seven years' imprisonment, to run consecutively to any other term of imprisonment imposed.

6

At the sentencing hearing, Jackson objected to the six-level increase under § 3A1.2, and also objected to the two-level increase to his offense level under § 3C1.2. After hearing testimony from three police officers involved in Jackson's investigation, as well as Jackson's testimony, the district court overruled his objections.

The court and the parties' agreed that, based on Jackson's offense level of 39 and criminal history category of III, his guideline range as to Count 1 was 324 to 405 months' imprisonment. The court and the parties further agreed that Jackson was required to serve a statutory mandatory consecutive sentence of least 84 months' imprisonment as to Count 3. After considering the sentencing factors set forth in 18 U.S.C. § 3553(a), the court granted Jackson a downward variance, sentencing him to 216 months' imprisonment as to Count 1 and a consecutive term of 84 months' imprisonment as to Count 3, for a total term of 300 months' imprisonment. The court asked the parties if there were any objections to its findings of fact and conclusions of law, and Jackson reasserted his objection to the six-level increase under § 3A1.2(c). During the sentencing hearing, Jackson did not make any statement indicating that he had an objection concerning his plea colloquy, or that he wished to withdraw his guilty plea.

**II.**

Because Jackson did not raise any objection regarding his guilty plea before the district court, we review his Rule 11 argument for plain error. *See United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005). "To establish plain error, a defendant must show there is (1) error, (2) that is plain, and (3) that affects substantial rights." *Id.* If these conditions are satisfied we may exercise our discretion to correct the error if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation omitted). When applying plain error review in the plea colloquy context, we "may consult the whole record when considering the effect of any error on substantial rights." *United States v. Monroe*, 353 F.3d 1346, 1350 (11th Cir. 2003) (quotation omitted).

Under Fed.R.Crim.P. 11, before a court can accept a guilty plea, the court must inform a defendant of, and make sure a defendant understands, certain matters. *See* Fed.R.Crim.P. 11(b)(1)(A)-(N). This includes an obligation to inform the defendant that he has "the right to plead not guilty, or having already so pleaded, to persist in that plea." Fed.R.Crim.P. 11(b)(1)(B). In general, "Rule 11 imposes upon a district court the obligation and responsibility to conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea." *United States v. Hernandez-Fraire*, 208 F.3d 945, 949 (11th Cir. 2000). When

accepting a guilty plea, a court must address three core concerns underlying Rule 11: "(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." *United States v. Jones*, 143 F.3d 1417, 1418-19 (11th Cir. 1998) (quotation omitted). We have "upheld plea colloquies that fail to address an item expressly required by Rule 11 so long as the overall plea colloquy adequately addresses these three core concerns." *Monroe*, 353 F.3d at 1354. In addition, "[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83, 124 S.Ct. 2333, 2340, 159 L.Ed.2d 157 (2004).

Here, Jackson cannot demonstrate that the court committed error, let alone plain error, in conducting his guilty-plea hearing. The plea colloquy transcript reflects that the magistrate effectively informed Jackson of his right to persist in a plea of not guilty. Specifically, the court made the following statements: (1) "I want to make sure that you understand that you are under no obligation whatsoever to plead guilty"; (2) "if you decide that you don't want to plead guilty anytime during this plea hearing, just raise your hand and say I changed my mind"; and

9

(3) "You are under no obligation whatsoever to come into this Court and plead guilty. You have the absolute right to say I am not guilty." Jackson cites to certain pages of the plea-colloquy transcript in support of his assertion that the magistrate failed to inform him that he had the right to persist in a plea of not guilty. These same pages of the transcript, however, demonstrate that the court stated, "You have the absolute right to say I am not guilty." Moreover, the magistrate went above and beyond Rule 11's minimum requirements by inviting Jackson to raise his hand at any time if he wished to persist in his plea of not guilty, and informing him that, in the event that he decided that he did not want to plead guilty, nothing that he said at the plea colloquy could be used against him. Thus, the court not only informed Jackson of his right to persist in a plea of not guilty, it also ensured that he would feel comfortable in exercising this right.

To the extent that Jackson's argument could be construed as one that the district court erred by failing to recite, verbatim, the language used in Fed.R.Crim.P. 11(b)(1)(B), his argument lacks merit. Jackson fails to point to precedent indicating that a district court or magistrate is required to engage in a verbatim, mechanical recitation of the matters set forth in Rule 11. Rather, the court is required to address Rule 11's core concerns—that the defendant's plea is free from coercion, and that he understand the nature of the charges against him

10

and the direct consequences of his guilty plea.  Here, the magistrate addressed these core concerns by asking Jackson if any promises or threats had been made in connection with his plea, reviewing the charges against him, and informing him that he was giving up his right to a jury trial, along with its attendant rights.

Finally, even if Jackson could demonstrate that the magistrate erred by failing to comply with Rule 11, he still would not be able to satisfy the plain-error standard of review because he makes no attempt to demonstrate that, but for the magistrate's alleged error, he would not have pled guilty.

**III.**

We review *de novo* issues concerning the validity of an appeal waiver provision.  *United States v. Benitez-Zapata*, 131 F.3d 1444, 1446 (11th Cir. 1997).  A sentence-appeal waiver must be entered into knowingly and voluntarily and "will be enforced if the government demonstrates *either*: (1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver."  *Id.*  A sentence-appeal waiver is a direct consequence of a guilty plea, encompassed within a core concern of Rule 11—that the defendant be aware of the direct consequences of his guilty plea.  *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993).  A sentence-appeal waiver includes the

11

waiver of the right to appeal difficult or debatable legal issues or even blatant error. *United States v. Howle*, 166 F.3d 1166, 1169 (11th Cir. 1999).

Because Jackson's appeal waiver was knowing and voluntary, we do not review the sentencing arguments he raises in his brief on appeal. As an initial matter, Jackson's 300-month sentence did not fall within the exceptions to the appeal-waiver provision, because it did not constitute an upward variance from his guideline range, and did not exceed the statutory maximum sentence. In addition, the appeal-waiver provision is enforceable because, during the plea colloquy, the magistrate specifically questioned Jackson about the provision. The magistrate read the provision in open court, and explained the meaning of the provision to Jackson, who confirmed that he understood its significance. Because the appeal-waiver provision is enforceable, Jackson is precluded from raising his sentencing arguments on appeal, regardless of whether they have merit.

**AFFIRMED.**