[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 19-11497, 19-11509
Non-Argument Calendar

_____

D.C. Docket Nos. 1:18-cr-20602-KMW-7, 1:19-tp-20017-KMW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CESAR OCTAVIO ARMENTA LOPEZ,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(July 8, 2020)

Before WILLIAM PRYOR, Chief Judge, MARTIN, and JILL PRYOR, Circuit
Judges.

PER CURIAM:

In this consolidated appeal, Cesar Octavio Armenta Lopez ("Lopez") appeals the revocation of his supervised release as well as his conviction for conspiracy to possess with intent to distribute cocaine on a vessel subject to the jurisdiction of the United States. Lopez says the district court did not have subject matter jurisdiction over his conspiracy charge because the record did not establish that the vessel he was on at the time of his arrest was subject to the jurisdiction of the United States. He also argues that the district court abused its discretion by revoking his supervised release without first allowing him to address the court, and by erroneously concluding that he admitted to the supervised release violations. After careful consideration, we vacate Lopez's criminal conviction and remand for further proceedings consistent with this opinion. However, we affirm the revocation of Lopez's supervised release.

## I.

Lopez and six codefendants were charged by a superseding indictment with violations of the Maritime Drug Law Enforcement Act ("MDLEA") in the Southern District of Florida. Lopez was charged with conspiracy to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70506(b) (Count 1), and possession with intent to distribute five kilograms or more of

2

cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503(a)(1) and 18 U.S.C. § 2 (Count 2).

Lopez pled guilty to Count 1 pursuant to a plea agreement. The factual proffer given with his plea agreement states that Lopez agreed to serve as a crewmember on a motorboat transporting cocaine from Colombia to Mexico. On June 28, 2018, Lopez was on a 30-foot-long open motor boat in the Pacific Ocean, along with six other men. The factual proffer states that the "boat had no hull numbers, registration in any country, or flag" and was "travelling in international waters." On board the boat were bales containing over five kilos of cocaine. Shortly after midnight on June 28, a United States Coast Guard vessel approached the boat and ordered that it stop to be searched. The boat drove away evasively and at a high rate of speed, while crewmen threw the bales of cocaine overboard. Early in the morning, the motorboat came to a stop and all the men aboard, including Lopez, were taken into custody.

At the time of this arrest, Lopez was serving a five-year term of supervised release for an unrelated MDLEA conviction in the Southern District of California. In August 2018, the probation office for that district notified the court that Lopez committed three violations of the terms of his supervised release. Violations 1 and 2 alleged that Lopez committed "another federal, state or local crime," and tracked the language of Counts 1 and 2 of the superseding indictment for each. Violation 3

3

alleged that Lopez failed to report to probation within 24 hours of reentering the United States "[o]n or before June 28, 2018." Several months later, jurisdiction over the alleged supervised release violations was transferred to the Southern District of Florida.

At Lopez's change-of-plea hearing in his criminal matter, the district court confirmed Lopez's understanding of Count 1 of the superseding indictment. In explaining to Lopez the elements of this offense, the court stated that the government would have to prove beyond a reasonable doubt that Lopez entered into a conspiracy, and that "the object of this agreement was for each of the conspirators to possess a controlled substance, which in this case was more than five kilograms of cocaine, while onboard a vessel subject to the jurisdiction of the United States." Lopez confirmed that he understood this. The court also asked Lopez whether the facts contained in the factual proffer were true, which Lopez confirmed. Apart from accepting the government's factual proffer, the district court made no factual findings concerning Lopez's offense.

In a single proceeding, the district court sentenced Lopez for his MDLEA conspiracy conviction and held a revocation hearing as to his supervised release violation. The court began the proceedings by addressing Lopez's sentence for his MDLEA conspiracy conviction. The parties agreed that Lopez's applicable Sentencing Guideline range for his conspiracy conviction was between 210- and

262-months imprisonment.  However, Lopez's counsel stated Lopez "timely indicate[d] that he wanted to resolve his case by pleading guilty both to the underlying substantive case and the supervised release case."  Therefore, the parties jointly recommended a below-Guideline total sentence of 180-months imprisonment, "which would include the underlying substantive case along with the supervised release violation."  The parties' recommendation consisted of "168 months on the criminal case and an additional 12 months to run consecutive" for the supervised release violation.  For his MDLEA conspiracy conviction in Count 1, the district court sentenced Lopez to 168-months imprisonment, along with a five-year term of supervised release.

The district court then turned to the revocation of Lopez's supervised release, and asked defense counsel to state Lopez's position as to the alleged violations.  With respect to Violations 1 and 2, which tracked Counts 1 and 2 of Lopez's superseding indictment, defense counsel responded that "[Lopez] is going to admit the violations and plead guilty."  With respect to the third violation, which alleged that Lopez failed to report within 24 hours of returning to the United States, defense counsel said, "I don't know that [Lopez] was in a position to report but for purposes of this hearing we can resolve it."  On that basis, the district court found that "Mr. Armenta Lopez has admitted his guilt to the three violations of supervised release as set forth in the petition."  Before announcing its sentence, the

5

district court offered Lopez an opportunity to address the court.  Lopez responded by asking the court "for mercy."  The district court then sentenced Lopez to 12-months imprisonment for his supervised release violations, to be served consecutively to his 168-month sentence for MDLEA conspiracy.

## II.

The district court's subject matter jurisdiction is a question of law that we review de novo, even when subject matter jurisdiction is challenged for the first time on appeal.  United States v. Iguaran, 821 F.3d 1335, 1336 (11th Cir. 2016) (per curiam).  A district court's revocation of supervised release is generally reviewed for an abuse of discretion.  United States v. Frazier, 26 F.3d 110, 112 (11th Cir. 1994).  However, where an objection is raised for the first time on appeal, we review for plain error.  United States v. Gresham, 325 F.3d 1262, 1265 (11th Cir. 2003).  To prove plain error, a defendant must show: (1) error, (2) that is plain, (3) that affects his substantial rights; and (4) that seriously affected the fairness of the judicial proceedings.  Id.

## III.

Lopez argues that his conviction under Count 1 must be vacated and reversed because the district court failed to make a preliminary finding of subject matter jurisdiction, as required under the MDLEA, 46 U.S.C. § 70504.  He also argues that the district court's failure to explain the MDLEA's jurisdictional

6

requirement during his plea colloquy rendered his guilty plea unknowing and involuntary. Lopez correctly observes that the district court failed to make the required finding as to its jurisdiction, so we remand for limited factfinding on that issue. And since the court's jurisdiction is a threshold issue, we do not reach Lopez's argument concerning the validity of his plea at this time.

Under the MDLEA, it is a crime to "knowingly or intentionally . . . manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance" while on board "a vessel subject to the jurisdiction of the United States," and to conspire to do the same. 46 U.S.C. §§ 70503(a)(1), (e)(1), and 70506(b). In 1996, Congress amended the MDLEA to clarify that "[j]urisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense." Id. § 70504(a); United States v. Campbell, 743 F.3d 802, 805 (11th Cir. 2014). Rather, "[j]urisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C. § 70504(a). This Court has "interpreted the 'on board a vessel subject to the jurisdiction of the United States' portion of the MDLEA as a congressionally imposed limit on courts' subject matter jurisdiction, akin to the amount-in-controversy requirement contained in 28 U.S.C. § 1332." Iguaran, 821 F.3d at 1336. Therefore, in order "for a district court to have adjudicatory authority over a charge that a defendant conspired to violate the substantive crime defined in the

7

MDLEA, the Government must preliminarily show that the conspiracy's vessel was, when apprehended, subject to the jurisdiction of the United States." Id. (alteration adopted) (quotation marks omitted).

The MDLEA's definition of a "vessel subject to the jurisdiction of the United States" includes, among other things, "a vessel without nationality." 46 U.S.C. § 70502(c)(1)(A).[1] A vessel without nationality includes (a) "a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed"; (b) "a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel"; and (c) "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." Id. § 70502(d)(1).

As the government concedes, there is nothing in Lopez's factual proffer, presentence investigation report, or plea hearing that establishes he was on board a vessel without nationality at the time of his arrest. See Br. of Appellee at 10. As a

---

[1] The MDLEA recognizes six categories of "vessel[s] subject to the jurisdiction of the United States." See 46 U.S.C. § 70502(c)(1). However, the parties agree that only one of the six categories applies here: "a vessel without nationality." See id. § 70502(c)(1)(A); Br. of Appellant at 12–14; Br. of Appellee at 9.

8

result, the record is insufficient to establish the district court's subject matter jurisdiction over the MDLEA offense in Count 1.  It is the government's burden to show that a vessel is subject to the jurisdiction of the United States.  See United States v. Tinoco, 304 F.3d 1088, 1114 (11th Cir. 2002).  Thus, the government's failure to establish jurisdiction in the district court would ordinarily be grounds to dismiss the indictment.  See, e.g., United States v. Guerro, 789 F. App'x 742, 750–51 (11th Cir. 2019) (unpublished).  However, where the defendant's "failure to challenge the district court's jurisdiction is at least partially responsible for the lack of a developed record, we have said that the proper course of action is to remand the case to the district court for factual findings as to jurisdiction." Iguaran, 821 F.3d at 1338 (alteration adopted) (quotation marks omitted).

Lopez challenges the district court's jurisdiction over his MDLEA offense for the first time here on appeal.  We therefore remand this matter to the district court to determine whether subject matter jurisdiction exists.  On limited remand, the government should be given an opportunity to submit evidence supporting its assertion that Lopez's vessel was subject to the jurisdiction of the United States, and Lopez should be afforded an opportunity to present evidence that it was not. Id.  If the government carries its burden of establishing that Lopez was on board a vessel subject to the jurisdiction of the United States when he was arrested, the

9

court should reinstate Lopez's conviction.[2] Id.  If the court finds that the government has not proven jurisdiction, it should enter a judgment dismissing Count 1 for lack of jurisdiction.  Id.

Lopez also says his plea agreement was invalid because the district court (a) failed to determine its jurisdiction prior to accepting Lopez's plea agreement; and (b) erroneously advised Lopez at his plea colloquy that the MDLEA's jurisdiction requirement was an element of his offense.  Because the court's subject matter jurisdiction over Lopez's indictment is a threshold matter, we do not address Lopez's argument concerning the validity of his plea agreement at this time.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95, 118 S. Ct. 1003, 1012 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." (alteration adopted) (quotation marks omitted)).

**IV.**

Lopez argues that his due process rights were violated when the district court failed to give him an opportunity to address the court personally before adjudicating him guilty of the supervised release violations.  He also says the

---

[2] The government argues that, on remand, it need only prove facts establishing the district court's jurisdiction by a preponderance of the evidence.  This Court has yet to decide "whether the government must establish the jurisdictional requirement beyond a reasonable doubt or by a preponderance of the evidence."  Tinoco, 304 F.3d at 1114 n.25.  We decline to now opine on the proper standard of proof.  Instead, we allow the district court to make that determination, if necessary, in the first instance.

district court erred in finding that he admitted to the supervised release violations. Finally, Lopez says there was no factual basis for the district court to accept his guilty plea to Violation 3. None of these arguments warrant reversal under plain error review.[3]

Defendants in revocation proceedings are entitled to certain minimal due process requirements, which are incorporated in Federal Rule of Criminal Procedure 32.1. Frazier, 26 F.3d at 114. Relevant here, principles of due process require that a defendant facing a revocation of his supervised release has an "opportunity to be heard in person and to present witnesses and documentary evidence." Morrissey v. Brewer, 408 U.S. 471, 489, 92 S. Ct. 2593, 2604 (1972); see also Fed. R. Crim. P. 32.1(b)(2)(E) (providing that the defendant is "entitled to . . . an opportunity to make a statement and present any information in mitigation"). In the context of a criminal guilty plea, Federal Rule of Criminal Procedure 11 requires a district court to "address the defendant personally in open court and inform the defendant of, and determine that the defendant understands[,] the nature of the charge to which the plea is offered and the potential consequences of that plea." United States v. Lewis, 115 F.3d 1531, 1535 (11th Cir. 1997) (per curiam) (alteration adopted) (quotation marks omitted). However, this Court has

---

[3] Because Lopez raises these arguments for the first time on appeal, we review them for plain error. See Gresham, 325 F.3d at 1265.

11

held that Rule 11 does not apply in the context of revocation proceedings. See

United States v. Johns, 625 F.2d 1175, 1176 (5th Cir. Unit B 1980).[4]

Lopez says he was not given an "opportunity to be heard in person" because

the district court did not invite him to personally address the court prior to

accepting his guilty plea. He argues that, under the Supreme Court's decision in

Morrissey, this is a violation of his due process rights. However, Lopez has not

demonstrated that the district court plainly erred. Although Morrissey held that

defendants have a due process right "to be heard in person" before the revocation

of supervised release, nothing in that opinion suggests that an "opportunity to be

heard" means an opportunity to personally address the court. See 408 U.S. at 489,

92 S. Ct. at 2604. Indeed, in Morrissey, the Court expressly declined to impose

any rigid procedures that a court must follow before revoking a term of supervised

release. Id. at 488, 92 S. Ct. at 2604 (declining to "write a code of procedure" for

revocation hearings). And while Rule 11 does require the district court to address

the defendant personally, Lewis, 115 F.3d at 1535, Rule 11 does not apply in

revocation proceedings, Johns, 625 F.2d at 1176. Because no precedent of the

Supreme Court or this Court "directly resolv[es]" Lopez's challenge in his favor,

the district court did not commit plain error. See United States v. Lejarde-Rada,

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the Fifth Circuit handed down prior to the close of business on September 30, 1981. Id. at 1207.

12

319 F.3d 1288, 1291 (11th Cir. 2003) (per curiam) (holding that plain error does not exist when "the explicit language of a statute or rule does not specifically resolve an issue" and "there is no precedent from the Supreme Court or this Court directly resolving it").

Lopez also argues that the district court plainly erred in "finding that [he] had admitted all three violations." Br. of Appellant at 19. Lopez appears to argue the district court's failure to elicit an express guilty plea from Lopez himself—as opposed to one communicated through counsel—constituted a due process violation. In United States v. Moriarty, 429 F.3d 1012 (11th Cir. 2005) (per curiam), this Court held in the context of a criminal guilty plea that a district court's failure to elicit an "express declaration of [the defendant's] guilty plea was not plain error" because nothing in the record "indicat[ed] that [the defendant] meant to plead other than guilty." Id. at 1020. Here, Lopez plainly intended to plead guilty. During his revocation proceeding, defense counsel stated that Lopez "timely indicate[d] that he wanted to resolve his case by pleading guilty both to the underlying substantive case and the supervised release case." (emphasis added). With respect to supervised release Violations 1 and 2, defense counsel stated that Lopez was "going to admit the violations and plead guilty." And as to Violation 3, counsel stated that, "for purposes of [the revocation] hearing we can resolve it." Nothing in the record suggests that Lopez did not intend to plead guilty. Indeed,

13

when given an opportunity to address the court personally, Lopez asked only for the court's mercy. On this basis, the district court reasonably concluded that Lopez intended to plead guilty to all three supervised release violations. See id. at 1019–20.

With respect to Violation 3, Lopez argues the district court plainly erred in accepting his guilty plea because the alleged violation was factually impossible. He points out that Violation 3 alleges he failed to report to the probation officer within 24 hours of his reentry into the United States "[o]n or before June 28, 2018." However, the factual proffer signed by the parties in Lopez's criminal matter states that he "was travelling in international waters" on June 28, 2018. Thus, according to Lopez, there was no factual basis for the court to accept his guilty plea. While there is some facial merit to Lopez's challenge, we conclude Lopez invited any error on the part of the district court when he agreed to plead guilty to Violation 3. See United States v. Love, 449 F.3d 1154, 1157 (11th Cir. 2006) (per curiam) (holding that defendant induced error at sentencing hearing by conceding that the court could impose a term of supervised release). As a result, we are precluded from reviewing this argument on appeal.[5] United States v.

---

[5] In his reply brief, Lopez also says there was no basis to find him guilty of Violations 1 and 2, which alleged that he committed "another federal, state or local crime," namely Counts 1 and 2 of the superseding indictment. He argues that, because the district court never established subject matter jurisdiction over Counts 1 and 2, those offenses did not constitute a "federal, state, or local crime," and thus could not serve as a basis for his supervised release revocation. Because Lopez raises this issue for the first time in his reply brief, we do not consider it. See

14

Silvestri, 409 F.3d 1311, 1327 (11th Cir. 2005) ("Where invited error exists, it precludes a court from invoking the plain error rule and reversing." (quotation marks omitted)).

## V.

For these reasons, we **VACATE** Lopez's MDLEA conspiracy conviction and **REMAND** for further proceedings consistent with this opinion.  We **AFFIRM** the revocation of Lopez's supervised release.

---

United States v. Whitesell, 314 F.3d 1251, 1256 (11th Cir. 2002) (per curiam) (stating that issues raised for the first time in a reply brief are waived).