[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-15345
Non-Argument Calendar

_____

D.C. Docket No. 1:18-cr-20785-PCH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAFAEL ERENIO IZQUIERDO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 5, 2021)

Before GRANT, LUCK, and EDMONDSON, Circuit Judges.

PER CURIAM:

Rafael Izquierdo appeals his conviction after pleading guilty to unlawful procurement of naturalization and citizenship, in violation of 18 U.S.C. § 1425(a). No reversible error has been shown; we affirm.

Izquierdo is a native of Cuba who became a lawful permanent resident of the United States and a naturalized citizen on 30 September 2016.  As part of the naturalization process, Izquierdo completed an Immigration Form N-400, Application for Naturalization ("Application").  By signing the Application, Izquierdo certified under penalty of perjury that the information on the Application was true.  In response to Part 11, Question 22 on the Application -- "[h]ave you EVER committed, assisted in committing, or attempted to commit, a crime or offense for which you were NOT arrested?" -- Izquierdo answered "No." Izquierdo confirmed this answer two more times: during an August 2016 interview for naturalization, and on his Immigration Form N-455, Notice of Naturalization Oath Ceremony.

2

In 2017, Izquierdo was convicted after pleading guilty to conspiracy to commit wire fraud: a conspiracy that was ongoing between January 2014 and January 2017.

Given the dates of the wire fraud conspiracy -- and contrary to Izquierdo's responses during his naturalization proceedings in 2016 -- Izquierdo had committed and was continuing to commit crimes and offenses for which he had not been arrested. Based on Izquierdo's false representations under oath during the naturalization process, Izquierdo was charged with unlawful procurement of naturalization and citizenship, in violation of 18 U.S.C. § 1425(a).

I.

On appeal, Izquierdo contends his guilty plea was not entered knowingly and voluntarily. As a result, he says the plea proceedings deprived him of due process and failed to comply with the requirements of Fed. R. Crim. P. 11.

Because Izquierdo challenges the adequacy of his plea proceedings for the first time on appeal, we review his arguments only for plain error. See United States v. Moriarty, 429 F.3d 1012, 1018 (11th Cir. 2005) (when not raised in the district court, both constitutional objections to a plea and objections based on Fed.

3

R. Crim. P. 11 are subject to plain error review).  Under the plain-error standard, the defendant must show "(1) error, (2) that is plain, and (3) that affects substantial rights."  Id. at 1019.  An error is "plain" if it is "clear" or "obvious."  United States v. Gonzalez, 834 F.3d 1206, 1218 (11th Cir. 2016).  To show that a plain error affected substantial rights in the context of a guilty plea, a defendant "must show a reasonable probability that, but for the error, he would not have entered the plea."  See United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004).

"The foundational principles governing guilty plea procedures derive from constitutional notions of due process."  United States v. Presendieu, 880 F.3d 1228, 1238 (11th Cir. 2018).  "Because a guilty plea involves the relinquishment of several constitutional rights and privileges, it must be entered voluntarily and knowingly."  Id.

Rule 11 "is designed to assist the district court in making the constitutionally required determination that a defendant's guilty plea is truly voluntary."  McCarthy v. United States, 394 U.S. 459, 465 (1969).  Rule 11 directs specifically that the court inform the defendant of -- and make sure the defendant understands -- certain matters.  See Fed. R. Crim. P. 11(b)(1).  In determining whether a defendant's plea is knowing and voluntary, the district court must address three "core concerns" underlying Rule 11: (1) whether the plea is free from coercion; (2) whether the

4

defendant understands the nature of the charges; and (3) whether the defendant understands the consequences of the guilty plea. Presendieu, 880 F.3d at 1238. We will uphold a plea colloquy -- even if the district court fails to address expressly an item listed in Rule 11 -- when the colloquy addresses adequately the three core concerns. See United States v. Hernandez-Fraire, 208 F.3d 945, 950 (11th Cir. 2000).

Section 1425(a) makes it a crime to "knowingly procure[] or attempt[] to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship." See 18 U.S.C. § 1425(a). To obtain a conviction under section 1425(a), the government must prove "that an illegal act by the defendant played some role in [his] acquisition of citizenship." Maslenjak v. United States, 137 S. Ct. 1918, 1923 (2017). When -- as in this case -- the illegal act is making a false statement, the government must show "that the defendant lied about facts that would have mattered to an immigration official, because they would have justified denying naturalization or would predictably have led to other facts warranting that result." See id.

5

A.

Izquierdo first complains that the district court failed to explain adequately the elements of the charged offense, including specifically the materiality element recognized in Maslenjak. We disagree.

There exists "no rigid formula or 'mechanical rule' for determining whether the district court adequately informed the defendant of the nature of the charges." Presendieu, 880 F.3d at 1238. Nor does Rule 11 mandate that the district court list the elements of the offense. See id.; Fed. R. Crim. P. 11(b)(1)(G). Instead, we consider the adequacy of a plea colloquy on a case-by-case basis, "depending on the complexity of the charges and the defendant's intelligence and sophistication." Presendieu, 880 F.3d at 1238.

At the plea colloquy, the district court discussed with Izquierdo the offense charged in the indictment and the terms of the written plea agreement. Izquierdo told the district court that he had reviewed and discussed those documents with his lawyer, understood the nature of the charge against him, and had no unanswered questions. The government then recited the factual proffer, which included this language:

6

If the defendant had told the truth and informed immigration authorities that he was committing the aforementioned offenses, the United States Citizenship and Immigration Service, USCIS, would have conducted further investigation regarding the defendant's moral character and eligibility for naturalization.  By giving false testimony to immigration officials about an issue that was <u>material</u> to his application, the defendant procured his naturalization contrary to law. (emphasis added).

Izquierdo said he understood the government's proffer and agreed that he in fact had engaged in the conduct described by the government.

This case involves a single straightforward offense.  And nothing evidenced that Izquierdo -- who had a master's degree in veterinarian medicine -- lacked the intelligence or sophistication necessary to understand the nature of that charge. Given the record, the district court made no clear or obvious error in concluding that Izquierdo understood the nature of the charge against him.

B.

Izquierdo also complains that the district court failed to ensure that he understood the consequences of his guilty plea.  Izquierdo says the district court never explained adequately that a guilty plea would result in mandatory revocation

7

of his United States citizenship and cancellation of his Certificate of Naturalization.

Although the district court first said Izquierdo would "likely" lose his citizenship, the district court later said expressly -- and Izquierdo agreed -- that 8 U.S.C. § 1451(e) makes denaturalization a mandatory consequence of pleading guilty to a violation of 18 U.S.C. § 1425(a).  In addition, both the written plea agreement and the Presentence Investigation Report provided that Izquierdo "understands that denaturalization is a consequence of pleading guilty" and "that pleading guilty may also have other consequences with respect to his immigration status."  According to the written plea agreement, Izquierdo also "affirm[ed] that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States."

Given the record in this case, we conclude that the district court addressed adequately Rule 11's "core concerns."  In addition, Izquierdo has failed to allege that a reasonable probability exists that -- but for the district court's alleged Rule 11 errors -- he would not have entered his guilty plea.  Izquierdo, thus, cannot show that the alleged errors affected his substantial rights.  See Dominguez

8

Benitez, 542 U.S. at 83.  The district court committed no plain error in determining that Izquierdo's guilty plea was knowing and voluntary.


II.


On appeal, Izquierdo now seeks to challenge Question 22 on the Application.  First, he contends the terms "crime" and "offense" as used on the Application are so broad that they render Question 22 unconstitutionally vague. Izquierdo next contends that Question 22 required him to incriminate himself in violation of the "exculpatory no" doctrine.  We reject these arguments.

The void-for-vagueness doctrine applies plainly only to certain statutes; the doctrine is thus not clearly applicable to challenge a question on an immigration form.  See Beckles v. United States, 137 S. Ct. 886, 892-95 (concluding that the advisory sentencing guidelines are not subject to a vagueness challenge: the void-for-vagueness doctrine applies only to "laws that define criminal offenses and laws that fix the permissible sentences for criminal offenses." (emphasis omitted)); United States v. Matchett, 837 F.3d 1118, 1122 (11th Cir. 2016) ("the vagueness doctrine applies only to laws that regulate private conduct" including laws that define crimes, fix sentences, restrict speech, and regulate businesses).  About

Izquierdo's second argument, the "exculpatory no" doctrine was eliminated by the

Supreme Court in <u>Brogan v. United States</u>, 522 U.S. 398, 404 (1998).

AFFIRMED.