[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12841
Non-Argument Calendar

_____

D.C. Docket No. 1:20-cr-20046-KMM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RUTH DIAZ-BURGOS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 23, 2021)

Before ROSENBAUM, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

Ruth Diaz-Burgos appeals her convictions for conspiracy to possess with

intent to distribute and possession with intent to distribute 500 grams or more of

methamphetamine. She contends that the district court committed plain error during her plea colloquy by eliciting admissions of guilt from her before informing her of her rights and failing to advise her of essential information required by Rule 11(b) of the Federal Rules of Criminal Procedure. After careful review, we affirm.

## I.

In January 2020, Diaz-Burgos was indicted for conspiracy to possess with intent to distribute and possession with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 846. She pled guilty to both counts without the benefit of a plea agreement at a change-of-plea hearing in March 2020.

At the plea hearing, which was conducted through an interpreter, the district court confirmed Diaz-Burgos's intent to plead guilty and then proceeded directly with questioning her about the nature of the charges. Specifically, the court stated, "Count 1 is that you agreed with others to possess with intent to distribute methamphetamine – Is that what you did? – between December 2019 and January 17, 2020?" Diaz-Burgos replied, "Yes." The court noticed a hesitation in her response, so it repeated the question and again she answered in the affirmative. The court then asked, "And on January 17, Count 2 says, you knowingly and intentionally possessed with intent to distribute 500 grams or more of

methamphetamine, the same amount as Count 1. Did you do that?" Diaz-Burgos replied, "Yes."

The district court then had the government read a written factual proffer detailing Diaz-Burgos's involvement in the offenses. According to the proffer, in January 2020, a narcotics supplier contacted a confidential source regarding the transport of approximately 21 kilograms of methamphetamine from Atlanta to Miami. The supplier then spoke with Diaz-Burgos, who, several days later, drove to the meeting location with a duffel bag containing the methamphetamine. When she arrived, she parked next to the confidential source and an undercover officer. At Diaz-Burgos's direction, the confidential source removed the duffel bag containing the methamphetamine and placed it in the undercover officer's car. The undercover officer asked Diaz-Burgos if the methamphetamine was "liquid or crystal," and she responded that it was crystal and of very good quality. This interaction was caught on video and audio from the undercover officer's car. The confidential source then gave Diaz-Burgos a duffel bag containing sham money for the methamphetamine. Shortly thereafter, she was arrested and, after waiving her *Miranda* rights, admitted to transporting methamphetamine from Atlanta to Miami.

The district court asked Diaz-Burgos if she agreed with everything in the proffer, and she responded, "Not with everything." After a brief exchange, the court engaged in the following discussion with Diaz-Burgos:

THE COURT: What did you do that was wrong on January 17 and before that in this conspiracy? What did you do that was wrong? Did you participate in a drug conspiracy?

DEFENDANT: Yes.

THE COURT: Did you possess drugs?

DEFENDANT: Yes.

THE COURT: Did you know they were drugs?

DEFENDANT: Yes.

THE COURT: Why did you do it?

DEFENDANT: Because I needed the money.

Attempting to narrow down her disagreement with the factual proffer, the court briefly recessed the hearing to permit her to go over the factual proffer with the interpreter and underline any facts she disagreed with and to speak with defense counsel.   When the hearing resumed, defense counsel represented that Diaz-Burgos was "in full agreement with the Factual Proffer."

The district court then turned to the consequences of pleading guilty, including the rights Diaz-Burgos would be waiving.  The court advised her that

> [w]hen you plead guilty, it means there's no trial, no appeal, no witnesses.  You're no longer presumed innocent.  The prosecutor doesn't have to prove his accusation against you.  He doesn't have to prove what's in the Factual Proffer.  He would probably present witnesses, but because you're pleading guilty, they will not be questioned.  Your lawyer will not cross-examine them.  You will not present any witnesses.  The case will be over and done with with the sentence.

4

"In other words," the court continued, "you give up the right to remain silent, the right to testify, the right to be presumed innocent, [and] the right to require the prosecutor to prove his accusations beyond a reasonable doubt in front of a jury," as well as additional collateral consequences. Diaz-Burgos stated that she understood these consequences. The court also advised her of the minimum and maximum statutory penalties (10 years and life imprisonment, respectively), that the Sentencing Guidelines were "give or take 15 years' imprisonment," and that she may be eligible to be sentenced below the mandatory minimum based on the "safety valve." Diaz-Burgos said she understood all of that and still wished to plead guilty. The court reiterated that she was giving up "the right to be presumed innocent, the right to require the prosecutor to prove his accusation, the right to testify, the right to remain silent, everything," and that the only issue left would be her sentence, and she said she understood.

Next, the district court turned to whether Diaz-Burgos was competent to plead guilty and whether she had been coerced in any way. In response to the court's questions, Diaz-Burgos stated that she had been diagnosed with bipolar disorder and other conditions she was not able to name, that she had received psychiatric treatment and was currently taking medication, but that she understood the proceedings and was there to plead guilty because it was in her own best interest. She further stated that she had sufficient time to speak with her attorney and was

5

satisfied with his representation, and that she had not been coerced to plead guilty or promised anything for pleading guilty. Defense counsel advised that, in his opinion, Diaz-Burgos was competent to enter the plea and that she did so freely and voluntarily. Satisfied with these responses, the district court accepted the guilty plea.

The district court sentenced Diaz-Burgos to a total of 90 months of imprisonment, below the ordinary statutory minimum of 10 years because of the safety valve, *see* 18 U.S.C. § 3553(f). After sentencing, Diaz-Burgos filed a motion to appoint appellate counsel, which was construed as a notice of appeal. In the motion, she wrote that she still did not understand the process that led to her conviction because her plea counsel had been ineffective, that she had "been accused of a crime that I do not understand" because she was "like a bystander" but had been sentenced as if "I was the one committing the felony," and that the court failed to take into account her mental illness and medications that impaired her consciousness. After a hearing, the district court appointed substitute counsel for this appeal.

## II.

Diaz-Burgos contends that the plea colloquy was fatally defective because the district court "blatantly violated" Rule 11(b)(1) by eliciting admissions of guilt before informing her of her rights and failing to advise her of essential information required by that rule. She maintains that her guilty plea was unknowing and

6

involuntary as a result, particularly when viewed against other aspects of the record, such as her confusion regarding the factual proffer, her single-word responses, the language barrier between her and her attorney, and her post-sentencing letter alleging ineffective assistance and confusion about the proceedings.

**A.**

Because Diaz-Burgos raises these arguments for the first time on appeal, we review them for plain error only. *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005). To establish plain error, a defendant must show (1) an error, (2) that is plain, and (3) that affects substantial rights. *Id.* An error generally is not "plain" unless either "the explicit language of a statute or rule" or "precedent from the Supreme Court or this Court" specifically resolves the issue. *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003). And to establish that her substantial rights were affected, Diaz-Burgos "must show a reasonable probability that, but for the error, [s]he would not have entered the plea." *United States v. Bates*, 960 F.3d 1278, 1296 (11th Cir. 2020) (quotation marks omitted).

To ensure that guilty pleas are knowing and voluntary, and therefore constitutionally valid, "Rule 11(b) sets out procedures that district courts must follow when accepting guilty pleas." *United States v. Presendieu*, 880 F.3d 1228, 1238 (11th Cir. 2018); *see McCarthy v. United States*, 394 U.S. 459, 466 (1969). "These procedures are designed to address the three 'core objectives' necessary for

a knowing and voluntary guilty plea: (1) that the defendant enters [her] plea free from coercion, (2) that [s]he understands the nature of the charges, and (3) that [s]he understands the consequences of [her] plea." *Presendieu*, 880 F.3d at 1238.

Regarding the first core objective, Rule 11(b)(2) provides that the district court must "determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2).

Regarding the second core principle, the district court must "inform the defendant of, and determine that the defendant understands," "the nature of each charge to which the defendant is pleading." Rule 11(b)(1)(G). There is no exact formula for determining whether the court adequately informed the defendant of the nature of the charges. *Presendieu*, 880 F.3d at 1238. The court is not necessarily required to list out each element of the offense. *Id.* The adequacy of a plea colloquy depends "on the complexity of the charges and the defendant's intelligence and sophistication." *Id.*

Regarding the third core principle, the district court must inform the defendant of, and determine that she understands, her right to a jury trial and various trial rights, the waiver of those rights if the court accepts a guilty plea, and various matters related to sentencing and other penalties, including statutory minimums or maximums, the Sentencing Guidelines and the 18 U.S.C. § 3553(a) factors, forfeiture, restitution, and special assessments. *See* Rule 11(b)(1)(B)–(F), (H)–(M).

The defendant's trial rights include the right to be represented by counsel and "the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses." *See* Rule 11(b)(1)(D)–(E). The district court also must explain that the defendant can be prosecuted for perjury for testifying falsely under oath. *See* Rule 11(b)(1)(A).

Although the requirements of Rule 11 are "mandatory," not "aspirational," our evaluation of the adequacy of a plea colloquy is governed by "matters of substance, not form." *United States v. Monroe*, 353 F.3d 1346, 1351 (11th Cir. 2003). The district court is not required to follow Rule 11 verbatim, *id.*, and we will uphold "plea colloquies that fail to address an item expressly required by Rule 11 so long as the overall plea colloquy adequately addresses the[] three core concerns" outlined above, *id.* at 1354. While complete or near complete failures to address a core concern are reversible error, a "slip up," in which the district court forgets to explicitly cover an item in Rule 11, but otherwise addresses the core concerns, will not be a basis for remand. *See id.* at 1355-56.

## B.

Here, the district court did not plainly err in accepting Diaz-Burgos's guilty plea. Our review of the plea colloquy shows that the court, although it did not

9

comply with all the technical requirements of Rule 11(b), adequately addressed the three core concerns and ensured that her plea was knowing and voluntary.

First, Diaz-Burgos objects that the district court elicited incriminating statements from her before informing her of her rights, such as the right to remain silent. But nothing in Rule 11(b) mandates that the court proceed in a particular order. Rather, the rule simply requires the court to address various matters "[b]efore the court accepts a plea of guilty." *See* Rule 11(b)(1), (2). Nor does she point to any statute or precedential decision that supports her argument.[1] In fact, in *Moriarty* we suggested that it would be "preferabl[e] at the outset" for the court to inquire of the defendant how she is pleading to each count of the indictment. *Moriarty*, 429 F.3d at 1019. As a result, she cannot establish that any error in the court's sequencing of the hearing was "plain." *See Lejarde-Rada*, 319 F.3d at 1291.

Second, the district court ensured that the guilty plea was voluntary and free from coercion. *See Presendieu*, 880 F.3d at 1238. In response to the court's questions, Diaz-Burgos stated that she had sufficient time to speak with her attorney, that she was satisfied with his representation, and that she had decided to plead guilty because she was in fact guilty and it was in her own best interest, not because of any

---

[1] Instead, Diaz-Burgos repeatedly references the Benchbook for U.S. District Court Judges published by the Federal Judicial Center. But, as she acknowledges, the Benchbook is merely a "guide" for judges that "incorporates constitutional, statutory, and rule requirements" and "reflects common practice." *See* Appellant's Initial Br. at 12 & n.3. It does not independently create legal rules that could be used to establish plain error, even if we agree with her as a practical matter that district courts should hew closely to the Benchbook's guidance.

promises or coercion.  Defense counsel also confirmed that, in his opinion, Diaz-Burgos entered the guilty plea freely and voluntarily.

Third, the district court adequately informed Diaz-Burgos of the nature of the charges.  *See id.*  While the court did not list the elements of the offense or read directly from the indictment, the crimes were not complex, and the colloquy otherwise shows that Diaz-Burgos well understood the nature of the two charges against her.  The court informed her that "Count 1 is that you agreed with others to possess with intent to distribute methamphetamine . . . between December 2019 and January 17, 2020" and that "on January 17, Count 2 says, you knowingly and intentionally possessed with intent to distribute 500 grams or more of methamphetamine, the same amount as Count 1."  She indicated that she understood. The court also specifically asked her if she "participate[d] in a drug conspiracy," "possess[ed] drugs," and "kn[ew] they were drugs," and she said "Yes" to each.  And she expressly agreed to a detailed factual proffer that was more than sufficient to prove she conspired to possess with intent to distribute and possessed with intent to distribute more than 500 grams of methamphetamine.  *See id.* at 1241 ("[T]he detailed nature of the seven-page factual proffer accompanying Presendieu's written plea agreement and his express assent to that proffer show that Presendieu well understood the nature of the two charges against him.").

Moreover, nothing in the record indicates that Diaz-Burgos lacked the intelligence and sophistication necessary to understand her charges. *See id.* at 1238. Despite language barriers between Diaz-Burgos and her attorney and the court, an interpreter was present during the plea colloquy. And while she suffers from mental illnesses, she expressly told the court that she was able to understand the proceedings, and the record confirms as much. For instance, after the government read the factual proffer, she initially stated that she did not agree "with everything" in it, demonstrating her understanding of the specific facts alleged and her engagement with the proceedings. The court then gave her the opportunity to review the factual proffer in detail with an interpreter and to speak with her attorney, after which her attorney stated that she was "in full agreement with the Factual Proffer."

Fourth, the district court substantially covered the rights Diaz-Burgos would be waiving by pleading guilty and the sentencing consequences of her guilty plea. The court advised her that "[w]hen you plead guilty, it means there's no trial, no appeal, no witnesses," and then twice stated that she would be giving up the right to remain silent, the right to testify, the right to be presumed innocent, and the right to require the prosecutor to prove his accusations beyond a reasonable doubt before a jury. Diaz-Burgos stated that she understood and did not express any confusion about these rights. The court also addressed the mandatory minimums and maximums, the possibility of safety-valve relief, and the Sentencing Guidelines.

12

While the court omitted certain information required by Rule 11[2] and could have been clearer about the matters it did cover, the court's violations of Rule 11 did not "result[] in a total or almost total failure to address a Rule 11 core concern." *Monroe*, 353 F.3d at 1355; *see Moriarty*, 429 F.3d at 1020 n.5 (upholding a plea colloquy where the court "touched on the right to a jury trial, the right to confront and cross-examine witnesses, and the right to compel attendance of witnesses," and the defendant did not express confusion about his rights during the colloquy).

Finally, Diaz-Burgos has not even attempted to show, and nothing in the records suggests, that "[s]he would not have entered the plea" if the district court had informed her of all the information required by Rule 11. *Bates*, 960 F.3d at 1296. Her arguments in her reply brief, relying on her post-sentencing letter to the court, come too late. *See Nat'l Mining Ass'n v. United Steel Workers*, 985 F.3d 1309, 1326 n.15 (11th Cir. 2021) ("[W]e do not consider arguments fairly raised for the first time in reply briefs."). In any case, her post-sentencing letter primarily asserts ineffective assistance of plea counsel, which is better addressed on collateral review, and her belief that the sentence was unreasonable. And her general assertions of confusion alone are not sufficient to overcome the "strong presumption that the

---

[2] In particular, the district court failed to advise Diaz-Burgos of her rights to persist in a plea of not guilty and to be represented by counsel, appointed if necessary, the government's right to prosecute false statements for perjury, the maximum penalties as they related to a term of supervised release, and the court's obligation to impose a special assessment.

13

statements made during the plea colloquy are true," *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994), particularly her statement that she was pleading guilty because it was in her best interest and her express assent to the detailed factual proffer demonstrating her guilt.

For these reasons, we affirm Diaz-Burgos's convictions.

**AFFIRMED.**

14